The Board of Trustees of the Illinois and Michigan Canal, appellants, *vs.* Philo A. Haven and Orlando Haven, appellees.

### *Appeal from Will.*

A proprietor of land, who lays out the same, under our statute, into town or city lots, vests the legal title to the land embraced by streets, in the corporation of the town or city, for the use and benefit of the public. It is a solemn dedication of the ground to the corporation, to be held in trust for the uses and purposes of the public.

The recording of the plat passes the fee in the streets to the corporation. If the town has not a corporate existence, the fee remains in abeyance, subject to vest in the corporation the moment it is created.

A purchaser of a town lot, designated upon a recorded plat, only acquires a title to the land included within the actual limits of the lot, as designated. He takes no interest in the street, except in common with the public, and cannot claim title to the centre of it.

Riparian proprietors can only claim half of the bed of the stream, and the use of half of the water naturally flowing along the channel. The property in the water is indivisible; each riparian proprietor is bound to use it as an entire stream, in its natural channel, in such way as not materially to injure others, who are jointly interested in it.

This was an appeal taken by the trustees of the canal from an order of the Will Circuit Court, approving an assessment of

damages in favor of the appellees, occasioned by diverting the water of the Des Plaines river from their mill, and applying it to the uses of the canal. The assessment was made in pursuance of an agreed case, which will be found in the opinion of this Court, in a case between the same parties, reported in 5th Gilman, commencing at page 548. The report of the assessors was made to the Will Circuit Court, Henderson, Judge, presiding.

I. N. Arnold, for appellants.

J. H. Collins and J. M. Wilson, for appellees.

Opinion by Treat, C. J.:

It was decided at the last term of this Court, that the appellees, as the owners of lots one and two, in block fifty-seven, bounded on the east bank of the Des Plaines river, had title to the centre of the stream, and were entitled to recover damages from the appellants, for diverting the water of the river from its natural channel, opposite those lots, from the 20th of April, 1848, to the 12th of September following. Canal Trustees *vs.* Haven, 5 Gilman, 548.

The damages have since been estimated, and the amount directed to be paid by the Circuit Court, from which order an appeal has been prosecuted. It is manifest from the report of the appraisers, that, in assessing the damages, they considered the appellees as the owners of both shores and the entire bed of the stream, and, consequently, entitled to the use of the whole of the water, as it is accustomed to flow along the channel. This presents the question, whether the appellees are riparian proprietors on the west bank of the river. They were the owners of lots one and four, in block fifty-six, on the west side of the river, from which, however, they were separated by a street, running up and down the stream. These lots lie directly opposite those owned by them on the east side of the river. Nearly all of the lots, and the whole of the street, are now occupied by the canal.

There are two conclusive reasons why the appellees are not riparian proprietors on the west bank of the river, and, therefore, have not an exclusive right to use the whole of the water naturally passing down the channel. The statute requires the proprietor of land, who is about to lay it out into town or city

lots, to cause a plat thereof to be made, acknowledged and recorded, on which the lots, streets and alleys are to be particularly designated and described; and then proceeds to declare, that "the plat or map, when made out, certified, acknowledged and recorded, as required by this division, and every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on said plat or map, shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed, and shall be considered, to all intents and purposes, as a general warranty against such donor or donors, their heirs and representatives, to the said donee or donees, grantee or grantees, for his, her or their use, for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever. And the land intended to be for streets, alleys, ways, commons or other public uses, in any town or city, or addition thereto, shall be held in the corporate name thereof, in trust to, and for the uses and purposes set forth and expressed or intended." R. S., ch. 25, secs. 17 to 21. Under the provisions of this statute, the legal title to the land embraced by a street is vested in the corporation of the town or city, for the use and benefit of the public. It is not in the power of the proprietor of the lots to transfer the fee in the street to his grantee. The acknowledgment and recording of the plat has all the force and effect of an express grant. It operates by way of estoppel, and concludes the former owner, and all claiming through or under him, from asserting title. It is a solemn dedication of the ground to the corporation, to be held in trust for the uses and purposes of the public. On the recording of the plat, the fee in the streets, *eo instanti*, passes to the corporation. If the plat is recorded before the town has a corporate existence, the fee remains in abeyance, subject to vest in the corporation the moment it is created. A purchaser only acquires a title to the land included within the actual limits of the lot, as designated on the plat. He takes no interest in the street, except in common with the public—the right of passage over it. He is estopped by the solemn act of his grantor, from claiming title to the centre of the street. Whether the title would revert to the former proprietor, on the dissolution of the corporation, or the abandonment of the ground

for the purposes of a street, is a question which it is needless now to discuss.

But independent of the statute, there is a decisive objection to the claim of the appellees to riparian rights on the west bank of the river. By the common law, a grant of land bordering on a highway or river, carried the exclusive right and title in the highway or river to the centre thereof, subject to the right of passage in the public, unless the terms of the grant clearly indicated an intention on the part of the grantor to confine the grantee to the edge or margin. In such case, the highway or river is regarded as the boundary or monument, and the purchaser takes to the middle of the monument, as part and parcel of the grant. This is stating the principle as broadly as it is laid down in any of the elementary books, or established by any of the adjudged cases. Conceding, then, for the purpose of the argument, that the doctrine of the common law is strictly applicable to this case, and applying it in its full extent, the appellees would fail utterly to make good their claim. Their grant would only carry them to the middle of the boundary. They would have no title whatever to the east half of the street, or the west half of the bed of the river.

In every point of view, therefore, the appellees are not riparian owners on the west bank of the stream. As a matter of course, the appraisers erred in assessing the damages to which they are entitled. Instead of owning the entire bed of the river, and having an exclusive right to the use of the whole of the water, they are the proprietors of only half of the bed of the stream, and entitled to use but half of the water naturally flowing along the channel. The property in a stream of water is regarded as indivisible. Each riparian proprietor is bound to use it as an entire stream, in its natural channel; for a severance would destroy the rights of all. One proprietor cannot so appropriate or use the stream, as materially to injure others jointly interested in it. Vandenburgh *vs.* Van Bergen, 13 Johnson, 212 ; Plumleigh *vs.* Dawson, 1 Gilman, 544.

The appellees, having a right to only one half of the water, must use it as it is accustomed to flow down the channel. The erection of the dam across the stream, by means of which the head of water was increased, and the value of the site and improvements enhanced, was unauthorized. The assessment of

damages for the deprivation of the water, must, therefore, be made with reference to the actual value of the use of one half of the water naturally flowing along the channel, without taking into consideration any artificial obstructions extending across the stream. If there had been no diversion of the water, the appellees could not maintain their dam across the river. The appellants were authorized by law to appropriate the water for the purposes of the canal, and they are only bound, in this proceeding, to compensate the appellees for the loss of their portion of it. The true measure of damages is the real value, for the period of time in question, of the use of one half of the water of the stream, to be used and applied in carrying on the mills and machinery of the appellees; in other words, how much would a man of ordinary prudence, desirous of leasing the site, water and improvements, be willing to pay for the use of them, in view of the rights of the appellees as above defined.

The judgment of the Circuit Court must be reversed, with costs, and the cause remanded, to the end that a reassessment of damages may be had.

*Judgment reversed.*