EDWARD HENDERSON *et al.*

*v.*

WILLIAM E. HATTERMAN.

*Filed at Ottawa June 19, 1893.*

1. . DEED—*when plat forms a part thereof.* Where a deed refers to a plat or a subdivision, the particulars shown upon such plat or subdivision are as much a part of the deed as though they were recited in it.

2. SAME—*for land bounded by public road.* As a general rule, a grant of land bounded upon a highway carries the fee in the highway to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent. So when a deed bounds an estate by or on a public way, the presumption is, if nothing to the contrary appears, that the center of the way is the boundary line.

3. The presumption that the owner of the adjoining land intended to convey his interest in the highway, may be overcome, either by the use of express terms excluding it, or by such facts and circumstances as show an intention to exclude it. But the intention to exclude it must appear from the language of the deed, as explained by surrounding circumstances. It makes no difference, in the application of the rule, whether the land abutting bears a certain number, or is a farm, called "black-acre," or otherwise.

4. Although the measurements set forth in the deed bring the line only to the side of the highway, the title will still be carried to the center of it, unless such words are used and such metes and bounds are set forth as show a contrary intention. But the title to the highway which thus passes is subject to the easement of the public.

5. All of a quarter section lying north of a public highway sixty-six feet wide, known as the "Indian Boundary Line road," was subdivided into nine lots, numbered from 1 to 9, inclusive, and two blanks lots. A deed did not specifically describe the land conveyed as a part of lot 9, but as a parcel of land "commencing on the south-west corner of lot 9 of U.'s subdivision, * * * running thence north-easterly along Indian Boundary Line four chains and thirty-three links; thence running north 108.16 feet; thence running west 232.98 feet; thence south 265.88 feet to the place of beginning:" *Held,* that the starting point in this description was the center of the road, or of the Indian Boundary Line, and not the north line of such road, and that the south-west corner of lot 9 must be regarded as located in the center of the Indian Boundary Line road, or in the Indian Boundary Line, at the intersection of that line with the center line, extended, of the street west of lot 9.

6. SAME—*description of land—monuments, courses and distances.* It is well settled that monuments control courses and distances, and courses and distances control the quantity of the land, when used or referred to in a deed. Quantity yields to course and distance, and they to monuments.

7. SAME—*highway may constitute a monument.* Highways, as well as streams and fences, are often referred to in deeds as monuments, and are regarded as such when the land conveyed abuts upon them. When a public highway is called for as a boundary, the title will pass to its center, subject to the right of passage. The thread of the road is the monument or abuttal.

8. SAME—*void for uncertainty in description.* A deed for a number of acres of land without describing any boundaries to the same would be void.

9. SUBDIVISION OF LAND—*bounded on a road.* Where the deeds under which the parties hold title refer not only to lot 9 in a subdivision of part of a quarter section, but also to an Indian Boundary Line, and the plat shows not only that lot 9 abuts at its south end upon the road, and that the Indian Boundary Line is the center of such road, but also that such subdivision of the quarter section lies north of the Indian Boundary Line, presumptively the subdivision will embrace the north half of the road, or the strip thirty-three feet wide which lies north of that line.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This is a petition to establish title under the Burnt Records Act, filed on April 26, 1890, in the Circuit Court of Cook

County by appellee against the appellants, and "all whom it may concern." It is conceded that John C. Ure is the common source of title. The deed, under which appellants claim, is a deed, dated April 27, 1871, and recorded May 16, 1871, executed by John C. Ure to Mary Whittaker and Sarah Ellen Henderson, (said Whittaker having subsequently conveyed her undivided half to Edward Henderson), and conveying the following premises: "All the following described lot, piece or parcel of land situate in the county of Cook and State of Illinois, known and described as follows, to-wit: that certain piece or parcel of land commencing on the south-west corner of lot nine (9), of Ure's subdivision of part of the south-east quarter of section thirty (30), township forty-one (41), north of range fourteen (14), east of the third principal meridian, running thence north-easterly along the Indian Boundary Line four (4) chains and thirty-three (33) links, thence running north one hundred and eight and sixteen one-hundredths (108.16) feet, thence running west two hundred and thirty-two and ninety-eight one-hundredths (232.98) feet, thence running south two hundred and sixty-five and eighty-eight one-hundredths (265.88) feet to the place of beginning, meaning and intending hereby to convey one (1) acre of land, without reference to metes and bounds as above described."

The deed, under which appellee claims, is a deed dated May 1, 1871, and recorded May 9, 1871, executed by said Ure to Augusta Mary Ducat, wife of Arthur C. Ducat (said Augusta having conveyed to a third person, who conveyed to said Arthur, the grantor of appellee) and conveying the following premises: "The north four and fifteen one-hundredths (4.15) acres of lot nine (9) of Ure's subdivision of that part of the south-east quarter of section thirty (30), township forty-one (41) north, range fourteen (14), east of the third principal meridian, according to plat recorded in Cook county registry of deeds, in book 173 of maps, page 31, being the north four and fifteen one-hundredths (4.15) acres of a tract of five and

fifteen one-hundredths (5.15) acres lying west and adjoining the east eight (8) acres of said quarter section, and being north of Indian Boundary Line, the south line of said four and fifteen one-hundredths (4.15) acres being bounded on the south by an east and west line."

The following is the plat, dated April 27, 1871, of the subdivision made by said John C. Ure:

The decree of the Court below finds, that the petitioner and the defendants hold under Ure as above stated; that said Ducat obtained title from the Government; that the records

have been destroyed by fire, etc.; that Ducat, although his deed from Ure was recorded before the deed to Whittaker and Henderson, had notice of the latter deed, and his title to that portion of the north 4.15 acres of lot 9, included in the description in the deed to Whittaker and Henderson, is subject to the latter deed, and he has no title thereto; that the description in the latter deed is by metes and bounds and the starting point of said lot is taken on the "Indian Boundary Line;" that the metes and bounds must control as to petitioner; that the measurement of the land in said latter deed, whether it be more or less than one acre, is and shall be from the "Indian Boundary Line" on the south-easterly side and from the center line of the 60 feet street on the west side of lot 9; that petitioner has title to all that part of lot 9 except the portion thereof in the south end thereof described as follows: "Commencing at the intersection of the center line of the street running north and south, west of said lot nine (9), and the Indian Boundary Line, being the center of the Indian Boundary Line road, and running north-easterly along said Indian Boundary Line 4 chains and 33 links, thence running north along the east line of said lot nine (9), 108.16 feet, thence west 239.32 feet, or to the center line of said north and south street, thence south to the place of beginning;" that defendants were in possession of a portion of said premises and that petitioner was entitled to the possession of all said lot except the said portion in the south end; that petitioner's title thereto be established and that the defendants surrender possession, etc. The case is brought to this Court by appeal of the defendants below. No cross-errors have been assigned upon the record by the appellee.

Mr. RICHARD PRENDERGAST, for the appellants:

A description of land in a deed is construed most strongly against the grantor. *Alton* v. *Transportation Co.* 12 Ill. 38; *Sharp* v. *Thompson*, 100 id. 447.

The courts will always give effect, in construing the description in a deed, to the intention of the parties.    Tiedeman on Real Prop. 828; *Hadden* v. *Houtz,* 15 Ill. 589; *Railroad Co.* v. *Keel,* 104 id. 455; *Kuecken* v. *Voltz,* 110 id. 264; *Batavia Manf. Co.* v. *Newton Wagon Co.* 91 id. 230; *Norton* v. *Hughes,* 17 Abb. N. C. 287, note.

If a deed contains two descriptions of the land, which do not coincide, the grantee may elect that which is most favorable to him.    *Sharp* v. *Thompson,* 100 Ill. 447; *Boon* v. *Clark,* 129 id. 111; *Casler* v. *Byers,* id. 657.

The deed for use to Ducat refers to a plat which marks out the Henderson land as one acre, and it is elementary that when lines are laid down in a plat and referred to in the deed, they are to be regarded as giving the true description of the parcel of land, as much as° if expressly recited in the deed itself.    2 Washburn on Real Prop. 638; *Trustees* v. *Schroll,* 120 Ill. 522; *McCormick* v. *Huse,* 78 id. 363; *Piper* v. *Connelly,* 108 id. 652; *Railroad Co.* v. *Koelle,* 104 id. 460; *Jackson* v. *Willsman,* 17 Johns. 147.

The rule of law is, that where lands are purchased and conveyed in accordance with a plat, the purchaser will be restricted to the boundaries as shown by the plat.    *McCormick* v. *Huse,* 78 Ill. 363; *McClintock* v. *Rogers,* 11 id. 279; *Blaney* v. *Rice,* 20 Pick. 62.

Where a deed contains a general description of the property conveyed, which is definite and certain in itself, and is followed by a particular description, also, such particular description will not limit or restrict the grant, which is clear and unambiguous, by the general description.    *Middleton* v. *Wharton,* 41 Minn. 266; *Barney* v. *Miller,* 18 Iowa, 466, and cases cited.

The intention of the contracting parties is the controlling fact in construing a deed.    *Railroad Co.* v. *Stigler,* 61 N. Y. 348; *Hall* v. *Eaton,* 139 Mass. 217.

The clause, "meaning and intending hereby to convey one (1) acre of land, without reference to metes and bounds as

above described," in the deed from Ure to Whittaker and Henderson, controls, and the decree should be modified so as to carve out for the appellants one acre off the south end of lot 9. *Boone* v. *Clark*, 129 Ill. 466; 97 N. Y. 634; *Esty* v. *Baker*, 50 Me. 331; *Melvin* v. *Locks and Canals*, 5 Metc. 28; *Haley* v. *Armstory*, 44 Cal. 132; *Ornsby* v. *Jones*, 73 N. Y. 621; *Wresthoff* v. *Seymour*, 22 N. J. Eq. 66; *Master* v. *Alcott*, 101 N. Y. 152; *Gano* v. *Aldridge*, 27 Ind. 294.

Closing clauses in a description summing up the intention of the parties as to premises conveyed, have a controlling effect upon all prior parts of the description. Gerard on Titles to Real Prop. 511; *Ornsby* v. *Jones*, 73 N. Y. 621.

A description conveying one acre off the south end of lot 9 would be sufficient. *Myers* v. *Ludd*, 26 Ill. 415; *Colcord* v. *Alexander*, 67 id. 58; *Slates* v. *Breese*, 36 Mich. 77; *Wofford* v. *McKenna*, 23 Texas, 45; *Goodenow* v. *Curtis*, 18 Mich. 298; *Smiley* v. *Fries*, 104 Ill. 416.

The description by metes and bounds is rendered null by the general description, and hence the former should be discarded. *Kruse* v. *Wilson*, 79 Ill. 233; *Burns* v. *Miller*, 110 id. 242.

Actual location, on the strength of which improvements have been made, and where the description is vague, concludes parties and privies. *Laverty* v. *Marre*, 33 N. Y. 658; *Jackson* v. *Wood*, 13 Johns. 346; *Purington* v. *Railroad Co.* 46 Ill. 300; *Shriley* v. *Spencer*, 4 Gilm. 344; *Hathaway* v. *Evans*, 108 Mass. 267.

Mr. HERVEY H. ANDERSON, for the appellee:

By the common law a grant of land bordering on a highway or river carries the exclusive right and title in the highway or river to the center thereof, subject to the right of passage in the public, unless the terms of the grant clearly indicate an intention on the part of the grantor to confine the grantee to the edge or margin. *Canal Trustees* v. *Havens*, 11 Ill. 557.

36—146 ILL.

There are cited in support of the above, *Gebhardt* v. *Reeves,* 75 Ill. 307; *Rockwell* v. *Baldwin,* 53 id. 19; *Piper* v. *Connelly,* 108 id. 646; *Hamilton* v. *Railroad Co.* 124 id. 235; *Chicago* v. *Rumsey,* 87 id. 351; 3 Kent's Com. (12th ed.) 432.

It is now well settled, that when a deed bounds an estate by or on a public way, the presumption is, if nothing else appears, that the center of the way is the boundary line. *Dean* v. *Lowell,* 135 Mass. 60; *Boston* v. *Richardson,* 13 Allen, 146; *Fisher* v. *Smith,* 9 Gray, 441; *White* v. *Godfrey,* 97 Mass. 472; *Peck* v. *Denniston,* 121 id. 17; *Transue* v. *Sell,* 105 Pa. St. 604; *Mott* v. *Mott,* 68 N. Y. 246; *Pike* v. *Monroe,* 36 Me. 309; *Salter* v. *Jonas,* 39 N. J. L. 469; *Moody* v. *Palmer,* 50 Cal. 31; *Motley* v. *Sargent,* 119 Mass. 231; *Winslow* v. *King,* 14 Gray, 323; *Parker* v. *Farmingham,* 8 Metc. 260; *Stark* v. *Coffin,* 105 Mass. 328.

Monuments showing the boundaries of a lot conveyed must prevail over the distances given in the description. *Lincoln* v. *McLaughlin,* 74 Ill. 15.

This court has held, so often that we can hardly expect to be called on to repeat it, that both course and distance must yield to monuments placed on natural objects when adopted as courses. *Kamphouse* v. *Gaffner,* 73 Ill. 456.

The rule is universal, that when boundaries are given with reference to fixed and known objects they control courses and distances. 4 Kent's Com. (8th ed.) 519; 2 Washburn on Real Prop. (2d ed.) 673; *Lovell* v. *Chicago,* 68 Ill. 518; *Cottingham* v. *Parr,* 93 id. 233; *Herr* v. *Bass,* 2 Mass. 382; *Burkholder* v. *Markley,* 98 Pa. St. 37; *Ayers* v. *Watson,* 113 U. S. 594; *Watson* v. *Jones,* 85 Pa. St. 117; *Morse* v. *Rogers,* 118 Mass. 572; *Trust Co.* v. *Foster,* 78 Va. 413; *Chilley* v. *Childs,* 73 Me. 130; *Sanborn* v. *Rice,* 129 Mass. 387; *Perry* v. *Richards,* 52 Cal. 496; *Twogood* v. *Hoyt,* 42 Mich. 609; *Ayers* v. *Watson,* 113 U. S. 695; *Jackson* v. *Cole,* 16 Johns. 256; *Jackson* v. *Freer,* 17 id. 29; *Masten* v. *Olcott,* 101 N. Y. 158.

Monuments control courses and distances, because grants are supposed to be made with reference to an actual view of the premises. *Wendell* v. *People,* 8 Wend. 183; 94 N. Y. 272.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

A reference to the plat shows, that the land claimed by the appellants abuts, on its southeasterly side, upon a road sixty-six feet wide, known as the Indian Boundary Line road. There is nothing to indicate, that this road was anything more than an ordinary highway when Ure's subdivision was made. The center line of this road is what is known as the Indian Boundary Line. Appellants claim, that they own an acre of ground in lot 9, and that the southerly line of the land so owned by them coincides with the northerly line of the Indian Boundary Line Road, while appellee contends that the southerly line of the land of appellants coincides with the Indian Boundary Line, or the center of said road.

Where a deed refers to a plat or subdivision, the particulars shown upon such plat or subdivision are as much a part of the deed, as though they were recited in it. (*L. & N. R. R. Co.* v. *Koelle,* 104 Ill. 455; *Piper* v. *Connelly,* 108 id. 646; 3 Wash. on Real Prop. marg. page 638). Here, the deeds, under which both parties hold, not only refer to lot 9 in Ure's subdivision, but also to the Indian Boundary Line. When we look at the plat of Ure's subdivision, we find not only that lot 9 abuts at its south end upon said road, and that the Indian Boundary Line is the center of said road, but also that Ure's subdivision is a subdivision of that part of the S. E. $\frac{1}{4}$ of section 30, "(lying north of Indian Boundary Line and east of Green Bay road,) of Sec. 30, T. 41, R. 14 E., into nine lots and two blank lots." Presumptively, therefore, the land subdivided comes down to that line, and the subdivision embraces the north half of the road, or the strip 33 feet wide which lies north of said line. The deed from Uhre to Ducat describes lot 9 as a tract of 5.15 acres "being north of Indian Boundary

Line;" and if lot 9 comes down to the Indian Boundary Line, it must include the north half of the road to the extent of its width on the south.

It is well settled, as a general rule, that "a grant of land bounded upon a highway   *   *   *   carries the fee in the highway to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent." (3 Kent's Com. marg. page 434; Elliott's Roads and Streets, page 549, and cases in note 2). When a deed bounds an estate by or on a public way, the presumption is, if nothing else appears, that the center of the way is the boundary line. (*Dean* v. *Lowell*, 135 Mass. 55). It will not be supposed that a man would care to keep title to the highway in himself, when he had parted with the land bordering thereon. (*Salter* v. *Jonas*, 39 N. J. L. 469; 3 Wash. on Real Prop. marg. page 635.) The presumption that the owner of the adjoining land intended to convey his interest in the highway may be overcome, either by the use of express terms excluding it, or by such facts and circumstances as show an intention to exclude it. The intent to exclude the highway must appear from the language of the deed, as explained by surrounding circumstances. (*Mott* v. *Mott*, 68 N. Y. 246; Elliott's Roads and Streets, page 550). It makes no difference in the application of the rule, whether the land abutting upon the highway is a lot which bears a certain number, or is a farm, called black-acre, or otherwise. (*Kimball* v. *City of Kenosha*, 4 Wis. 321; *Berridge* v. *Ward*, 10 Com. B. Rep. 400). Although the measurement set forth in the deed brings the line only to the side of the highway, the title will still be carried to the center of it, unless such words are used and such metes and bounds are set forth as show a contrary intention. (3 Kent's Com. marg. page 434, note 37; Elliott's Roads and Streets, page 550; *Paul* v. *Carver*, 26 Pa. St. 223; *Cox* v. *Freedley*, 33 id. 124; *Johnson* v. *Anderson*, 18 Me. 76; *Cottle* v. *Young*, 59 id. 105; *Wood-*

*man* v. *Spencer,* 54 N. H. 507). Of course, it is understood, that the title to the center of the highway, which thus passes by the grant of the adjoining land, is subject to the easement of the public in the highway.

An application of these principles to the description contained in the deed from Ure to Whittaker and Henderson leads to the conclusion, that the southern boundary line of the land thereby conveyed was the center of the Indian Boundary Line Road, or, what is the same thing, the Indian Boundary Line. The deed, construed in the light of such surrounding circumstances as are admissible to explain its meaning, bespeaks no intention on the part of the grantor to exclude his interest in the highway.

Ure's subdivision was of the S. E. ¼ of the section "into nine lots and two blank lots." The only two blank lots on the plat are Mrs. Whittaker's 1 acre and Keys' 8.75 acres. Thus, according to the plat, the 9 lots and the two blank lots are distinct and several pieces of property, so that, if it were not for the descriptions used in the deeds, Mrs. Whittaker's 1 acre would not appear to be a part of lot 9. The deed to her does not specifically describe it as a part of lot 9, but as a parcel of land "commencing on the southwest corner of lot 9 of Ure's subdivision  *  *  *  running thence northeasterly along the Indian Boundary Line 4 chains and 33 links; thence running north 108.16 feet," etc. Where is the starting point in this description? The appellants contend, that the "southwest corner of lot 9" is in the north line of the Road, that is to say, 33 feet north of the center of the Road or of the Indian Boundary Line. If this be so, the description is an impossible one, because, after leaving the starting point, the course must be along the Indian Boundary Line; the words are: "running thence northeasterly along the Indian Boundary Line 4 chains and 33 links." The Indian Boundary Line is 33 feet south of the "southwest corner of lot 9" if that corner is in the north line of the road. To commence at a starting point thus lo-

cated, it would be necessary to jump to a point 33 feet south thereof, in order to carry out the succeeding portion of the description. The street west of lot 9 is 60 feet wide. If the starting point is in the north line of the Indian Boundary road and 30 feet east of the center of said street, a line 4 chains and 33 links in length would throw the eastern line of the Whittaker tract upon the land of Keys. According to the description in the Whittaker deed, the east line of the land of appellants starts from the Indian Boundary Line, "thence running north 108.16 feet." If the starting point be in the north line of the road, then the southern end of the east line of the tract would be 33 feet south of the southern end of the west line thereof which terminates at the place of beginning. The Whittaker deed does not describe a course from the beginning, either along the Indian Boundary Line Road, or along the north line of that road, or along the south line of lot 9, but along the center of the road, that is to say, along the Indian Boundary Line.

Inasmuch as, under the rules of law above laid down, the boundary is in the center of the highway where the land conveyed abuts on the highway, then every part of such boundary, including the starting point as well as every other point therein, must be in the center of the highway. We, therefore, think that the southwest corner of lot 9 must be regarded as located in the center of the Indian Boundary Line Road, or in the Indian Boundary Line at the intersection of that line with the center line extended of the street west of lot 9. (3 Washb. on Real Prop. marg. page 635—5th ed—top page 448, par. 51, note 9, and cases cited).

It is well settled, that monuments control courses and distances, and the courses and distances control the quantity of land. (*Cottingham* v. *Parr*, 93 Ill. 233; *Kamphouse* v. *Gaffner*, 73 id. 453; *Lincoln* v. *McLaughlin*, 74 id. 11; *Brown* v. *Huger*, 21 How. 305). Highways, as well as streams, walls and fences, are often referred to in deeds as monuments, and are regarded

as such when the land conveyed abuts upon them. (*Canal·
Trustees* v. *Haven*, 11 Ill. 554; 3 Wash. on Real Prop. marg.
page 632, top page 435; 2 Am. & Eng. Enc. of Law, page
500). In *Newhall* v. *Ireson*, 8 Cush. 595, where it appeared
that the last measurement brought the line to the southerly
side of the highway, it was said: "This fact does not rebut
the strong presumption, that boundary on a highway is *ad
filum viæ.* The road is a monument; the thread of the road
is that monument or abuttal." In *Paul* v. *Carver*, 26 Pa. St.
223, where a public highway was called for as a boundary, it
was held that the title passed to the center subject to the right
of passage, and it was said: "It is regarded as a single line.
The thread of the road is the monument or abuttal." In *Canal
Trustees* v. *Haven, supra,* after announcing the doctrine that,
at common law, a grant of land bordering on a highway car-
ries the exclusive right and title in the highway to the center
thereof subject to the right of passage in the public, unless the
terms of the grant clearly indicate an intention on the part of
the grantor to confine the grantee to the edge, we said: "In
such case, the highway *  *  *  is regarded as the bound-
ary or monument, and the purchaser takes to the middle of
the monument, as part and parcel of the grant." In *Helmer*
v. *Castle*, 109 Ill. 664, the language of the *Haven* case was
quoted and applied to the following description in a deed:
"Commencing at the northeast corner of that part of section
11  *  *  *  south of the road there running; thence run-
ning westerly along the line of said road 141.6 feet," etc.; and
it was there said: "It was intended by these words to mean
the part of the tract on the south side of the road extending
north to the center line of the road. Then the northeast cor-
ner, the starting point, must fall on the center line of the road.
This is strongly corroborated, also, by the succeeding phrase-
ology, 'thence running westerly along the line of the road,'
etc., which would seem to clearly mean center line of the road,
for there is no other line of the road. The sides of the road

are quite different, and if the south side of the road had been intended, it is fair to presume the language would have been to that effect."

So, here, if the north side of the road had been intended as the south boundary of the tract conveyed to the grantors of appellants, it is fair to presume that the language would have been to that effect; and the center line or thread of the road, which is the Indian Boundary Line, must be regarded as a monument which will control the location of the starting point. The Indian Boundary Line was established in 1816 by "a treaty of peace, friendship and limits, made and concluded between Ninian Edwards, William Clark and August Chouteau, commissioners plenipotentiary of the United States of America on the part and behalf of the said States, of the one part, and the chiefs and warriors of united tribes of Ottawas, Chippewas and Pottawatomies residing on the Illinois and Melwakee and other waters, and on the southwestern parts of Lake Michigan, of the other part." In and by article 1 of said treaty the said tribes ceded to the United States, among other lands, the land contained in the following bounds, to-wit: "Beginning on the left bank of the Fox river of Illinois ten miles above the mouth of said Fox river; thence running so as to cross Sandy creek (now Au Sable river) ten miles above its mouth; thence in a direct line to a point ten miles north of the west end of the portage between Chicago creek, which empties into Lake Michigan and the River Depleine, a fork of the Illinois; thence in a direct line to a point on Lake Michigan ten miles northward of the mouth of the Chicago creek; thence along the lake to a point ten miles southward of the mouth of the said Chicago creek; thence in a direct line to a point on the Kankakee ten miles above its mouth; thence with the said Kankakee and the Illinois river to the mouth of Fox river, and thence to the beginning." (U. S. Statutes at Large, Vol. 7, entitled Indian Treaties, page 146). The same line is referred to in a treaty between the United States and

the same Tribes, made in 1830, wherein said Tribes ceded certain lands, one of the boundary lines of which is described as running "along the northwestern boundary line of the cession of 1816, to Lake Michigan." (Idem, page 320).

It is claimed, however, by counsel for appellants that the words, "meaning and intending hereby to convey one acre of land without reference to metes and bounds as above described," which follow in the description in the deed from Ure to Whittaker and Henderson, must be regarded as controlling the previous description so as to give the grantees an acre of ground, even though such quantity is not embraced within the specified limits. The general rule is, that quantity yields to course and distance, as course and distance yield to monuments. (*Cottingham* v. *Parr, supra*). Unless there is a covenant as to the quantity, it is seldom resorted to for the purpose of determining the boundary, and it is very rarely, if ever, permitted to control courses and distances. (3 Wash. on Real Prop. marg. page 630, top page 427). To sell a number of acres of land without describing any boundaries to the same would be void. (Idem, marg. page 632, top page 435). But if the words quoted should be construed as having the effect claimed for them, they do not necessarily amount to an express agreement to convey one acre north of the Indian Boundary Line Road. They are consistent with the intention to convey one acre north of the Indian Boundary Line, that is, one acre including the north half of the road, being a strip 33 feet wide and 4 chains and 33 links long. The decree below gives to the appellants one acre of land including said strip. Such is the testimony of the surveyors, and counsel for appellants admits in his brief, that the effect of the decree is "to give to appellants an acre, minus the quantity lying between the north line of the Indian Boundary Road and the Indian Boundary Line in the center of said road." In view of the fact, that the appellants get an acre of land subject to the easement of the public in the south 33 feet thereof, it is

unnecessary to consider what would have been the effect of the words quoted upon the previous description by metes and bounds, if the quantity including that subject to such easement had been less than an acre.

We do not think, that the appellee can be heard to complain of the decree below, as he has failed to assign cross-errors in accordance with the rule. The assignment of cross-errors, as well as of errors, must be written upon or attached to the record. (*St. Louis Bridge Co.* v. *The People*, 128 Ill. 422). Upon examining the record we do not find that this has been done in the present case.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*