Motion to strike brief and affirm decree September 15; denied
September 28, 1948; argued March 15; affirmed April 12; petition
for rehearing denied May 10, 1949

## BUELL ET UX. *v.* MATHES ET UX.

197 P. 2d 687
205 P. 2d 551

*George M. Roberts,* and *G. W. Kellington,* both of Medford, for motion.

*Hugh B. Collins,* of Medford, contra.

Before Rossman, Chief Justice, and Lusk, Belt, Kelly, Bailey, Brand and Hay, Justices.

ROSSMAN, C. J.

This cause is before us upon a motion of the respondents for

"an order striking from the record appellants' brief and affirming the decree of the Circuit Court

for Jackson County, heretofore granted herein, on the ground and for the reason that appellants' said brief does not comply with Rule 2 of the Rules of the Supreme Court, 9 O. C. L. A., page 317, in that said brief does not present any Assignments of Error for this court to consider.''

Appellants' brief does not employ the term ''assignment of error.'' It sets forth fifteen ''propositions of law.'' Only one of them mentions a ruling made by the trial judge. The proceeding which resulted in the decree challenged by the appellants was equitable. The prayer of the complaint sought an injunction.

Rule 2 of this court says:

''No alleged error of the circuit court will be considered by this court unless regularly presented in the assignments of error contained in the appellant's opening brief, except that * * * .''

Rule 13 provides:

''The printed brief, aside from the cover, in arrangement and contents shall be as follows:

'' * * *

''3. Assignments of Error or Propositions of Law Involved. Each assignment of error or proposition of law must be separately stated under an appropriate heading. Each such assignment or proposition should be clearly and succinctly stated. * * *

''The following arrangement and wording, as far as possible, together with reference to Bill of exceptions, are required:

''The court erred in failing to * * * .''

Going on, Rule 13 sets forth illustrations showing the manner in which the appellant should single out the error which he claims the circuit court committed.

One of the propositions of law submitted by appellants' brief follows:

> "Where the rightful use and the wrongful use are undistinguishably intermingled, the wrongful use will be permanently enjoined and any use whatever, including the rightful use, will be temporarily enjoined until such time as the defendant shows the rightful user can be separated from the wrongful user. In such a case there can be no balancing of the equities, and where the plaintiff's legal right is clear, equity has no discretion but to enforce it."

It will be observed that the proposition does not indicate whether or not it was submitted to the trial judge. If it was submitted, the proposition fails to indicate what position the court took in regard to it; in short, it fails to claim or assign error.

■ The terms "proposition" and "assignment of error" are not synonymous. According to 4 C. J. S., Appeal and Error, p. 1716, § 1217:

> "An assignment of error is distinguishable from a proposition in that the former is a formal complaint of some action of the trial court, while the latter merely sets forth the reasons why such action is erroneous."

■ The function of an assignment of error, as the term itself indicates, is to assign or claim error. An assignment of error is an indictment of something which occurred in the trial court and which the appellant claims renders the challenged decree or judgment reversible. Every assignment of error must designate a purported irregularity or a purportedly erroneous ruling and attribute error to it. If all of the assignments of error were written upon a single sheet of paper they would be, in effect, a complaint or a declara-

tion in this court made by the appellant. The respondent, by filing his answering brief, thus presents the issues for our attention.

This court from the earliest of times has enforced rules which required assignments of error to be specific. For instance, in *State of Oregon v. McKinnon,* 8 Or. 485, which was a contempt action, the court refused to consider an assignment of error which read: "The decision and judgment are against law." The opinion, referring to that purported assignment of error, said: " * * * it does not specify any particular ground of error upon which appellants intend to rely on this appeal."

*N. P. Terminal Co. v. Lowenberg,* 11 Or. 286, 3 P. 683, came before the court upon a motion to dismiss the appeal. The third ground of the motion was: "There is no assignment of errors in the notice of appeal." The following is taken from the opinion:

"The only assignments of error in the notice of appeal are that the court below erred:

"1. In admitting certain testimony as is fully stated in the bill of exceptions herein filed.

"2. In excluding certain testimony as is fully stated in said bill of exceptions.
* * *

"The particular errors relied upon must be specified. This has so often been ruled by this court that no further examination of the principles seems necessary. (State of Oregon v. McKinnon, 8 Or. 485).

"It is clearly not sufficient to assign error generally in admitting or excluding testimony, as shown by the bill of exceptions * * * .

"But upon the second and third grounds, the motion to dismiss must be sustained. ·

"The appeal is dismissed."

*Herbert v. Dufur*, 23 Or. 462, 32 P. 302, traces the development of the rule which requires an appellant to set forth with clarity the purported errors upon which he depends. The decision reviews the rule both in its statutory and nonstatutory form. We take the following from the decision:

" * * * In Swift v. Mulkey, supra, Strahan, J., said: 'The proper rule of practice is, that the appellant must put his finger upon the error complained of,' otherwise, he said, 'counsel need never do more than to say in his assignments of error that the court erred in its rulings on particular subjects, without in any measure discriminating or pointing out the specific errors, and then ask this court to go on a voyage of discovery through record in search of a particular error upon which counsel may be supposed to have relied.' And he further observed, that the court could not 'sanction such a practice; it is at variance with the requirements of our Code and with adjudged cases elsewhere.' "

The decision held:

" * * * the assignments are too indefinite and general to notify the respondent, or apprise the court, of the error upon which the appellant intends to rely upon the appeal."

In the instances to which we adverted the requirement for assignments of error was legislative and was contained in the section of our laws (Hill's Code, § 537) which made provision for the notice of appeal. That section said:

"The appellant shall cause a notice to be served on the adverse party, * * * and in case the judgment be one rendered in an action at law, shall specify the grounds of error, with reasonable certainty, upon which the appellant intends to rely upon the appeal; but in case the appeal be from a

decree, it shall not be necessary to specify any such grounds of error.''

Laws of 1899, § 537, which made provision for an oral notice of appeal as well as the existing writing notice, repealed the paragraph just quoted.

Following the enactment of Laws of 1899, § 537, this court revised its rules upon the subject of assignments of error (see 35 Or. 587). The revised rules, which went into effect July 2, 1900, were equally applicable to suits in equity and actions at law. Rule 9 continued in effect a rule adopted in 1894 (24 Or. 591) which required the appellant to set forth in the abstract of record his assignments of error. The Rules of 1894, like those which went into effect in 1900, were applicable to appeals affecting decrees as well as to those which challenged judgments. Rule 9, aforementioned, in setting forth the requirements for assignments of error, said:

"Assign and set out briefly and concisely the errors relied upon for a reversal or modification of the order, judgment, or decree appealed from.''

The rule was annotated; one of the annotations said:

"Where the appeal is taken from a decree entered on the pleadings, a formal assignment of errors is not imperatively necessary, though it is better practice to have it. (Neppach v. Jones, 28 Or. 286, 39 Pac. 999).''

Rule 10 said:

"On the hearing in this court, no questions will be examined or considered, except those going to the jurisdiction of the court, or when the pleading does not state facts sufficient to constitute a cause of action, or defense, or those arising upon the assignments of error, as contained in the printed abstract.''

Those requirements were enforced. Two examples are *Carter v. Simpson Estate Co.,* 103 Or. 383, 193 P. 913, 203 P. 580, and *Robinson v. Phegley,* 93 Or. 299, 177 P. 942, 178 P. 799, 182 P. 373. In the former, the decision pointed out that the penalty for the violation of the rule consisted of refusal by this court to consider "errors not assigned in the abstract, except those going to the jurisdiction of the court or the sufficiency of the action." In the Robinson case, the court found that the appellant's failure to have included in his abstract of record his assignments of error was excusable and for that reason denied a motion to dismiss the appeal. The appellant, however, was directed to file an amended abstract of record containing his assignments of error. *State v. Director,* 113 Or. 74, 227 P. 298, 231 P. 191, was a criminal action. The decision said:

"This court has applied the first sentence in Rule 12 in innumerable civil cases, and has consistently refused to notice errors not assigned. We do not intend here to relax that rule, where it is applicable."

In 1928 this court again revised its rules and in so doing provided that the assignments of error should be contained in the appellant's opening brief. See 123 Or. 676, at 681. The revision of 1928, in referring to the purported error which constitutes the basis of an assignment of error, said: "It should be clearly and succinctly pointed out." The statement of the rule was followed with illustrations which were intended to enable counsel to understand the requirement that each assignment of error should designate a specific error which the appellant claims was committed.

Since the revision of 1928 this court has redrafted its rules several times, but in all instances has retained

and strengthened the requirement that an appellant must put his finger upon the purported errors made by the trial judge.

If an appellant who attacks a decree or a judgment believes that the trial judge committed error in reaching the conclusion which is manifested by the decree or judgment, he ought to be able to specify the error. If he has no error in mind, he ought not take an appeal. It is true that it may be more difficult to specify error with precision in equity suits than in law actions. The difficulty may result from the absence of instructions to a jury and the possible omission of the chancellor to have ruled upon the admissibility of the evidence. But, if the decree from which an appellant seeks to be relieved is in truth erroneous, some irregularity occurred in the circuit court. If an irregularity, in fact, occurred, it may have taken place in (1) framing the issues; (2) a matter pertaining to a deposition; (3) a misapplication of the rules of evidence; (4) an erroneous application of the rules of practice; (5) a mistaken determination of the facts; or (6) an erroneous conception of the substantive law. Counsel seem to experience no difficulty in preparing assignments of error in equity cases. Some briefs which we reviewed before writing these lines indicate that it is as possible to write good assignments of error in equity suits as in law actions.

Proposition of Law 6, set forth in the appellants' brief, shows that in this suit it was possible to frame an assignment of error which designates a ruling of the trial judge and brands it as error. That proposition of law follows:

"The finding by trial court that plaintiffs own no part of the fee in the disputed lane is contrary to the undisputed evidence."

That proposition is the only one which is couched in the form of an assignment of error and which indicates a ruling by the trial judge.

When the assignments of error are nebulous in character, the result is the same as when a complaint filed in the circuit court lacks clarity. Neither opposing counsel nor the court can be certain of the intentions which lurk behind the ambiguities. If the writing of a brief is not preceded by the framing of assignments of error, the brief will suffer. Even under such circumstances, the brief may be a good treatise, but, in all likelihood, it will fail to come to grips with the error upon which the appellant wishes a ruling. The first step in the writing of a brief which will, in fact, attack the alleged error is the preparation of good assignments of error. A brief deficient in assignments of error is unfair to the respondent. It denies him a target and requires him to scatter his fire. Defective assignments of error may fail to acquaint this court with the errors the appellant has in mind. Appellants' briefs which do not comply with the rules in regard to assignments of error are frequently followed in their wake with petitions for rehearing. Time spent in compiling the assignments of error is not wasted. It is the precursor of a good brief. Assignments of error which sequester clearly, one by one, rulings which the appellant challenges make for brevity, cogency and clear thinking.

It is our belief that the above-quoted Proposition of Law 6 is the only one which can be deemed an assignment of error. We have no disposition to be unduly exacting, and, although Proposition of Law 6 is not termed an assignment of error, we shall deem it one.

We set forth in a preceding paragraph part of Rule 2 of this court; the remaining part reads:

> " * * * except that this court reserves the right to take notice of an error of law apparent on the face of the record. The objection that the circuit court had no jurisdiction of the cause, that the complaint does not state facts sufficient to constitute a cause of suit or action, or that the supreme court has no jurisdiction of the appeal, may be taken at any time."

We cannot strike from the record the appellants' brief. It contains a useful statement concerning the controversy, an apparently good review of the pleadings and the aforementioned Proposition of Law 6.

The respondents' motion is denied.

### ON THE MERITS

*Hugh B. Collins,* of Medford, argued the cause and filed a brief for appellants.

*G. W. Kellington,* of Medford, argued the cause for respondents. With him on the brief was George M. Roberts, of Medford.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, KELLY and BAILEY, Justices.

AFFIRMED.

BRAND, J.

In their complaint the plaintiffs allege that they are the owners and in possession of lands which are

described in the complaint; that the defendants have an interest in adjacent real property and that during the years 1945 and 1946 "up to and including, to-wit, the date of the commencement of this suit," the defendants have daily trespassed upon lands owned by and in possession of the plaintiffs. It is alleged that the defendants threaten to continue thus to trespass and the plaintiffs pray for an order restraining the same.

By their answer the defendants deny plaintiffs' allegation of ownership and possession except as stated in the answer. Defendants admit that for many years they have used a roadway leading to the Pacific Highway from defendants' property and that said roadway runs across a portion of the real property described in plaintiffs' complaint. As an affirmative answer defendants allege adverse use and possession of said roadway for more than twenty years. They also assert right to the use of the roadway as a way of necessity and by reason of estoppel and irrevocable license. Defendants pray for a decree confirming in them a perpetual easement for said roadway. The plaintiffs filed a reply by which they seek to show that the defendants are using the roadway in connection with lands to which the easement for road purposes, if it exists, would not be appurtenant. The trial court entered a decree in part as follows:

"that the plaintiffs, and each thereof, and any person or persons claiming by, through, or under them, as the owners of tracts 15, 16, 21 and 22 as shown on a sketch prepared by counsel and admitted as evidence in the trial of this case, a copy of which sketch is hereto attached, marked EXHIBIT 'A' and hereby made a part hereof, do not own the fee in the following described road-

way, leading from defendants' tract 11 to the Old Pacific Highway, as shown on said sketch, EXHIBIT 'A' hereof, to-wit:"

Then follows a metes and bounds description of a 20 foot roadway.

Plaintiffs were enjoined from interfering with the use by defendants of the said roadway. An understanding of the evidence in the case is impossible without reference to the sketch to which the trial court referred and which is attached to the decree. It is reproduced at this point.

The tracts owned by the plaintiffs and with which we are concerned are those numbered 15, 16 and 22. The tracts owned by the defendants are those numbered 3, 4, 5, 6, 9, 10, 11, 12 and 14. The disputed roadway to which plaintiffs claim title and possession is marked on the sketch as commencing on the east line of defendants' tract 11, extending between tracts 15 and 16 owned by the plaintiffs, to and across the Southern Pacific right-of-way and thence it extends over tract 22 to the highway. In this connection we quote from the transcript:

"Q Mr. Buel, does this disputed roadway lead between tracts of land 15 and 16 and across the Southern Pacific railroad right-of-way?

"A No; it ends. Fifteen and sixteen end at the railroad.

"Q Does this roadway run between 15 and 16?
"A Yes.

"Q And the roadway runs across the railroad and to the old Pacific Highway?
"A Yes.

"MR. COLLINS: It might at this time save time, your Honor. The plaintiffs agree that the roadway continues across the

# Exhibit "A"

railroad and on out to the old highway, and that any right to use the way that goes across Lot 2, which is on the map marked as 22, would necessarily follow if a right were established to use the strip between 15 and 16.

"MR. KELLINGTON: Then we will say there is no dispute on the right to use the road from the Southern Pacific to the old Pacific Highway?

MR. COLLINS: Let us not put it that way. Let us rather put it that if a right is established to use the way between 15 and 16, we will agree that by the same es-- tablishment of fact a right has been established to continue to the highway.

"THE COURT: The Court understands that."

Both sides of the roadway are fenced from tract 11 to the railroad right-of-way. The roadway is 20 feet in width.

■ After the filing of briefs in this court the respondents moved for an order striking appellants' brief upon the ground that, in violation of the rules of this court, it did not present any assignments of error for the court to consider. Rule 2 of this court is as follows:

"No alleged error of the circuit court will be considered by this court unless regularly presented in the assignments of error contained in the appellant's opening brief, except that * * *."

After citing cases tending to show that the rule applies in equity cases and should be enforced, this court examined appellants' brief and concluded that it contained one, but only one, assignment of error. The court said:

"We cannot strike from the record the appellants' brief. It contains a useful statement concerning the controversy, an apparently good review of the pleadings and the aforementioned Proposition of Law 6." *Buel v. Mathes,* supra, 197 P. (2d) 687.

"Proposition of Law 6" in appellants' brief is as follows:

"The finding by trial court that plaintiffs own no part of the fee in the disputed lane is contrary to the undisputed evidence."

We recognize that the ruling of the court in *Buel v. Mathes,* supra, governs our action here as the law of the case. No application to assign any other or different error was made by the appellants after the rendition of our decision upon the motion. We therefore direct and confine our attention to the single assignment of error found in appellants' brief.

We will first trace the chain of title by reason of which plaintiffs claim ownership in tracts 15, 16 and 22 according to the designations which appear upon exhibit "A" attached to the decree and reproduced here. On and prior to the 8th day of July, 1937, R. S. Page and Charlotte Page, his wife, were the owners of tracts 15, 16 and 22. They were also the owners of such rights in the disputed way between tracts 15 and 16 as had not been acquired by the defendants. The plaintiffs' claim of ownership of the fee in the disputed way depends upon the construction of the deeds in plaintiffs' chain of title through which plaintiffs acquired tracts 15 and 16. On the 8th day of July, 1937, tract 16 was conveyed by the then owners, R. S. Page and Charlotte Page, to J. C. Wattenberger. The instrument of conveyance was a bargain and sale deed. The description contained in that deed is as follows:

"beginning at a point which is South 89° 57' West 508.4 feet from a 2 inch iron pipe set for the southwest corner of Donation Land Calim No. 72, Township 38, South Range 1 West of Willamette Meridian in Jackson county, Oregon, and running thence North 844.5 feet to the southerly side of a private road from the Pacific Highway to the Mathes Tract; thence along said road as follows: North 61° 56' East 58.8 feet; North 54° 22' East 530 feet and North 30° 27' East 115 feet to the southerly line of right-of-way of Southern Pacific Railroad; thence along said southerly line of said railroad as follows: South 53° 51' East 569.1 feet; thence South 61° 01' East 114 feet; South 63° 18' East 100 feet; South 66° 04' East 40 feet; thence leaving said railroad South 34° 04' West 653.2 feet; thence North 55° 56' West 199 feet; thence South 33° 30' West 526.8 feet to a point which is South 89° 57' West 66.2 feet from above described Southwest corner of Donation Land Claim No. 72; thence South 89° 57' West 442.2 feet to place of beginning, containing 22.2 acres of land; EXCEPTING right-of-way of Talent Irrigation District for ditches and canals and EXCEPTING and RESERVING from the said above described premises the following described part thereof, to-wit:"

Then follow exceptions and reservations with which we are not concerned in this case. The deed continues as follows:

"TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

"TO HAVE AND TO HOLD the said above granted premises, with its appurtenances unto the said J. C. WATTENBERGER, his heirs and assigns forever."

The significant factors are (1) that the conveyance was by bargain and sale deed; (2) that the call which

describes the westerly boundary of tract 16 purports to give the exact distance to within five tenths of a foot from the south boundary of tract 16 to the southerly side of the road; (3) that the southerly side of the road is the northern-most end of the westerly boundary of tract 16; (4) that the call in the deed is "to the southerly side of a private road from the Pacific Highway to the Mathes Tract"; (5) that the northwesterly boundary of tract 16 is "along said road".

■ We next turn to the deed of 29 July 1937 from Page and wife to Wattenberger under which the grantee acquired tract 15. This deed was also executed during the month of July 1937. It appears that the two deeds were part of a single transaction although three weeks separated their execution. The testimony establishes that Wattenberger bought tracts 15 and 16 on contract in 1932, though the deeds were executed only in 1937. The description in the deed to tract 15 reads as follows:

"the following described premises, situate and being in Jackson county, state of Oregon, to-wit:

"From the southwest corner of Donation Land Claim No. 72 in Township 38, South, Range 1 West of the Willamette Meridian, in Jackson county, Oregon, run thence west 779.0 feet to the tract of land known as the Helman tract; thence north on the east line of said Helman tract 1112.0 feet to the tract known as the Nertherland tract; thence along the southeasterly line of said Netherland tract, north 43° 36' east 663.7 feet to the southerly line of the right of way of the Southern Pacific Railroad, the place of beginning. From said place of beginning running thence south 43° 36' west 663.7 feet; thence south 346.1 feet to the center line of a roadway leading to said Helman tract; thence along said center line of the roadway as follows: north 80° 42' east 29.1 feet; north 61° 56' east 333.0 feet; north

53° 42′ east 510.0 feet; north 30° 27′ east 193.0 feet to the northerly line of said right of way of the Southern Pacific Railroad; thence along said right of way as follows: north 54° 18′ west 59.5 feet; north 56° 22′ west 100.0 feet; north 59° 22′ west 100 feet; north 61° 43′ west 100.0 feet; north 63° 20′ west 33.5 feet; thence across said Railroad south 44° 41′ west 63.0 feet to the place of beginning.

"EXCEPTING from above described tract a strip of land 10 feet in width, adjoining on the northwest and parallel with above described center line of the roadway, being half of said roadway."

Other exceptions with which we are not concerned relate to the railroad right-of-way and an irrigation ditch. The deed is a bargain and sale deed and the habendum clause is as follows:

"TO HAVE AND TO HOLD said granted premises with their appurtenances unto the said J. C. WATTENBERGER, his heirs and assigns forever."

The deed to tract 15 requires no construction so far as its southerly boundary is concerned. The center line of the disputed way is first employed as the southeasterly boundary of tract 15 but the exception by express words excludes from the conveyance a strip of the disputed way 10 feet in width. The words of the exception, "adjoining on the Northwest and parallel with above described center line of the roadway" clearly mean adjoining the center line of the only roadway described in the deed, the one leading to the Helman tract, which was tract 11. The intent is made doubly clear by adding the words, "being half of said roadway." The clear intent manifested by the instrument was to retain the fee to a strip of the roadway 10 feet in width adjoining its center line on the north-

westerly side thereof. We also gather from the deed that the roadway between tracts 15 and 16 is 20 feet in width since a 10 foot strip is defined as being "half of said roadway." Plaintiffs attempt to convince the court that the words of the exception relate to some roadway adjoining the northwest boundary of tract 15 instead of adjoining on the northwest the center line of the roadway on the southerly side of tract 15. The center line of the roadway is not parallel to the northwest boundary of tract 15. It follows that the 10 foot strip could not adjoin the northwest boundary of tract 15 and at the same time be parallel with the center line of the only roadway mentioned in the deed. It is clear beyond peradventure that whatever may be said about the south half of the disputed roadway, plaintiffs never got the fee in the north 10 feet thereof. Tract 22 was included in the description contained in a deed of 8 July 1937 along with tract 16.

The plaintiffs acquired their interest through an administrator's deed conveying to them as tenants by the entirety:

"all of the right. title, estate. lien or interest which the said Jacob C. Wattenberger, also known as J. C. Wattenberger, had in said premises at the time of his death, and all of the right, title, estate, lien or interest which the estate of the said decedent has since acquired and now has in and to said real property and in and to any part thereof.

"TO HAVE AND TO HOLD all and singular the above mentioned and described premises, together with the tenements, hereditaments, and appurtenances thereunto belonging * * * "

The descriptions in the administrator's bargain and sale deed follow those found in the two deeds from Page and wife to Wattenberger. The deed to tract 15

is subject to the same exception of the 10 foot strip, "being half of said roadway" which appears in the Page deed.

John C. Smith, a licensed surveyor, as a witness for the plaintiffs, testified that he prepared a map from the deed references. In general it is simlar to the map attached to the decree of the circuit court and reproduced here. It was not based upon any survey and simply represents a platting of the calls of the deeds to the various numbered tracts to which we have referred. The map purports to be drawn to scale and was received in evidence. Concerning the descriptions in the two deeds from Page et ux to Wattenberger, and covering tracts 15 and 16, the witness testified:

"Q   Then there is, is there not, a narrow strip of land running from the Southern Pacific right-of-way down to and past the southwest corner of tract Number 15 which was not conveyed by either the deed in deed record 229, page 523, or in deed record book 229, page 525?

"A   All I can say is that they are shown here exactly according to the deeds, and apparently they do not come together.

"Q   You have drawn this to scale.  Can vou tell us about how wide that strip is that was not conveyed?

"A   Well, I have no scale with me.

"Q   This is on graph paper.

"A   If I could measure the fraction of an inch. One inch is three humdred feet.

"Q   Would you say that is about twenty feet?

"A   Yes; it could be."

A consideration of the history of the various tracts will aid in arriving at the proper construction of the deeds in question.  Prior to 1884, one Parhan was the

owner of tracts 11 to 22 inclusive. In that year he deeded tract 11 to Helman who deeded to Poley in 1896, from whom the defendants Mathes acquired it in August 1922. The disputed roadway was used by the defendants Mathes at least as early as 1919 when they were renting tract 9. It appears that Patton acquired tracts 9 and 10 in 1886. The source of his title does not appear. He conveyed those tracts to Witte who conveyed to Poley in 1895 who conveyed to the defendants Mathes by the deed of August 1922. It is clear that upon purchasing tract 11 in 1922 the defendants acquired and continuously used a way of necessity corresponding generally with the disputed way between tracts 15 and 16. That roadway was appurtenant to tract 11 during the ownership of Helman and was the only means of ingress and egress to and from tract 11 and over the lands of Parhan, Helman's grantor, which lands separated Helman's tract 11 from the highway.

Whether or not the disputed way constituted a way of necessity for tracts 9 and 10, it is at least clear that it constituted the only means of access to those tracts and was used as such from 1922 on. In 1930 Page was the owner of tracts 15, 16 and 22 when he sold tract 12 to the defendants Mathes. It is agreed that the disputed roadway, after crossing the railroad right-of-way, passes over tract 22 to the highway. It is clear that the defendants also had a way of necessity over the disputed roadway for the benefit of tract 12. The defendants contracted for the purchase of tract 14 in 1939 or 1940 and took a deed in 1942 and title came down through mean conveyances from Parhan. Defendants acquired tracts 3, 4, 5 and 6 in 1941 by inheritance. The disputed way is the only means of ingress and egress to and from all of the defendants' nine tracts. It will

be recalled that the plaintiffs acquired tracts 15, 16 and 22 in March, 1941. Page had become the owner of tracts 15, 16 and 22 in 1921. He contracted to sell to Wattenberger in 1932 and executed deeds in 1937. These are the deeds, the construction of which is at issue. Certain changes were made in the alignment of the disputed roadway by an agreement between Page and the defendants. We quote:

"Q  Was the roadway at the time you went into possession of tracts 9, 10 and 11 in exactly the same location that it is now in?

"A  Not exactly.

"Q  What happened in regard to that?

"A  Well, Mr. Page decided to cut that property up into lots and sell it off for the Page estate, and he asked me to straighten that road. That is, it was just zig-zag, and he asked me to put the road where it is now, so it would be easier surveyed and fenced. He figured it was more convenient for everybody concerned.

"Q  Did you straighten out the roadway?
"A  I did.

"Q  Did you do all the work?
"A  I did.

"Q  Did you put any gravel on it?
"A  I did."

The defendants improved and worked the road yearly at a total cost of about $1000. The course of the roadway was straightened in about 1930. After Wattenberger acquired the place upon contract and after the road had been straightened, Wattenberger and the witness Birdsall fenced the roadway on both sides with the exception of the frontage of lot 12 which was fenced by the defendants Mathes. Wattenberger "connected onto the northeast corner of lot 12 and went down to

the railroad track, then he run the fence on the north of this roadway.''

Both sides of the roadway were fenced and the roadway itself was graveled at and long prior to the time when the plaintiffs purchased tracts 15, 16 and 22. Of many other deeds which might throw light upon the issues, only one was introduced in evidence. We refer to the deed from Page and wife to the defendants, conveying tract 12. The call for thé westerly boundary of tract 12 reads as follows: ''running thence North 766.0 feet to the southerly side of a private road from the Pacific Highway to Mathes Tract;'' The deed continues: ''thence north 80° 42′ East along said road 29.1 feet; thence North 61° 56′ East 274.2 feet; thence South * * *.'' Notwithstanding the apparent jog in the disputed way north of tract 12, it was agreed before this court that the disputed way has a uniform width. Other testimony discloses that the disputed roadway was in use during the years 1914, 1915 and 1916 according to witness Whipple, and since 1898 according to the witness Bell, who is 74 years of age.

■ The plaintiffs' specific contention is that the undisputed evidence shows that they were the owners of the fee in the disputed roadway. They place reliance on O. C. L. A., § 70-111 which provides in part:

''The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:

''* * * *

''(4) When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title;''

It is unnecessary to decide whether the provisions of this statute apply in the case of a private way as distinguished from a public highway, for, as stated in *Brown v. Oregon Shortline R. R. Co.,* 36 Utah 257, 102 P. 740, concerning a similar statute (Section 1120, Utah Compiled Laws, 1907) that section is merely declaratory of the common law. It is established at common law that where land described by metes and bounds abuts upon a highway or where a highway is mentioned as a boundary or where lots are sold with reference to a plat which shows a highway as boundary, a presumption arises that the grantee takes the fee to the center of the highway if the grantor owned it. *McQuaid v. Portland & Vancouver Railway Co.,* 18 Or. 237, 22 P. 899; *Cross v. Talbot et al.,* 121 Or. 270, 254 P. 827; *Kingsley et al. v. Jacobs et al.,* 174 Or. 514, 149 P. (2d) 950; and see annotations in 123 A. L. R. 542; 47 A. L. R. 1276; 2 A. L. R. 6. However:

> " * * * as laid down by all authorities in cases of this kind, the rule in regard to boundaries upon streams and highways is a matter largely of construction, and the court in determining the intent of the grantor will take all the circumstances into consideration viewing both the conveyance and the local situation as it appears from the evidence." *Cross v. Talbot et al.,* supra.

A similar rule has been applied in the case of a conveyance by a description which actually coincides with a non-navigable stream. In that case the grantee ordinarily takes title to the center or thread of the stream; however, this court has held:

> " * * * If the conveyance had contained language showing an intention on the part of the grantor to reserve land lying between the bank and the thread of the stream, no doubt the court would

be obliged to give effect to such intention. * * *''
*Kingsley v. Jacobs,* supra.

■ Whether or not a deed to land abutting upon a highway conveys the fee to the center thereof is to be determined by the intention of the parties as it appears from the deed, ''when their relations and circumstances surrounding the transactions are considered.'' *Gosstol Realty Corporation v. Gillman,* 229 N. Y. S. 201; *Codman v. Evans,* 83 Mass. 443; *Henderson v. Hatterman,* 146 Ill. 555, 34 N. E. 1041; *Vanderbilt University et al. v. Williams et al.,* 152 Tenn. 664, 280 S. W. 689. The reason for the general rule raising a presumption of title to the center line of a highway is based upon the view that the seller of land could ordinarily have no object in retaining a narrow strip of land which is subject to the rights of others and which would be of no value to him when separated from adjoining property. See *MacCorkle v. City of Charleston,* 105 W. Va. 395, 142 S. E. 841, 58 A. L. R. 231. It has also been held that the presumptive rule:

> '' * * * was adopted to guard against the bootless and almost objectless litigations that might spring up to vex and harass the owners of land adjacent to public highways if the title to the land in the highway, with its attendant right to use this land in any way which did not interfere with the rights of the public, should remain in the original owner of the land.'' *Spence v. Frantz,* 195 Wis. 69, 217 N. W. 700.

Whether a similar presumption applies when the land conveyed abuts upon a private as distinguished from a public road, is a matter upon which the authorities are in conflict.

> ''Many courts have applied the presumption that the center of a street called for as a boundary

determines the boundary line to conveyances of land abutting upon private ways and alleys. Others hold that the presumption does not apply in such cases, and even courts which recognize the presumption appear to incline against its enforcement. Of course the grantee cannot claim to the center of an alley or private way under a deed showing an intent that the line of such way or alley should define the limits of the grant.'' 8 Am. Jur. Boundaries, § 48.

Whether, when the land is described as bounded on a private way, the same rule applies as in the case of a public way, so as to give to the grantee the land to the center line thereof, in the absence of the expression of a contrary intention, is a question on which the cases are not in accord. In one state in which the same rule of presumption is held to apply in the case of a private way, it has been said that an intention not to grant to the center of such a way is more readily indicated than in the case of a public way.'' Tiffany, Real Property, Vol. 4, Third Edition, Transfer Inter Vivos, § 996, p. 113.

In *Gray et al. v. Kelley,* 194 Mass. 533, 80 N. E. 651, the court said:

''* * * It is always a question what is the intention of the parties, and ordinarily the intention to retain the title in private land, over which a right of way is granted, is more easily indicated than the intention to limit one's grant by the sideline of a public street when the grantor owns to the center of it. Nothing is ever conveyed except what is included within the boundaries of the lot described, and the language of the deed must be scrutinized, in its application to the locus, to see where the true boundaries are.''

In *Seery v. City of Waterbury,* 82 Conn. 567, 74 At. 908, 25 L. R. A. N. S. 681, the owner of land opened a private passageway extending from a street to land of a third party. The way was known as ''Seery Place''.

Four houses were constructed fronting upon it and were sold. The question at issue was whether the title of the grantees ran to the center of Seery Place. The deed from the owner read, "Beginning at a point in the westerly line of Seery place 62′ 4″ from Mattatuck street, thence northerly in line of Seery place 62′ 4″ to Mattatuck street; then westerly in line of Mattatuck street 37′ 6″ * * *''. The court expressly recognized the fact that in Connecticut in respect to highways, abutting proprietors presumptively own the fee of the soil under that half of the highway contiguous to their lands. The court then considered the rule relative to conveyances of land contiguous to a private way. The court said:

"* * * In Massachusetts it has been roundly held that a deed of land bounded on a private way, laid out over land of the grantor, passes the fee to the center of the way, where there is nothing in the deed to require the opposite construction. Fisher v. Smith, 9 Gray (Mass.) 440, 444; McKenzie v. Gleason, 184 Mass. 452, 69 N. E. 1076, 100 Am. St. Rep. 566. In Maine an opposite conclusion has been reached. Ames v. Hilton, 70 Me. 43. There is here no statute or judicial precedent which governs, nor any general custom of which we can take judicial notice. The question is one, also not settled by the common law. It is therefore our duty to answer it by the choice of the rule which, in our judgment, is best calculated to do justice in cases of this character. This we have done. We adopt that which does not raise in case of a boundary on a private way the presumption which obtains in case of one on a highway. By that rule, because it is (or by our adoption of it becomes for Connecticut) the rule of justice, it may fairly be assumed prima facie that the parties to such a transaction intended to be governed, by force of the words which they employed. As the deed of the lot bounded 'westerly

on Seery place' gave no title to the fee of the soil under that passway, much more none was given by the deed of the lot on the opposite corner.''

On the other hand, in the *Boston Five Cents Saving Bank v. Massachusetts General Hospital,* 255 Mass. 583, 152 N. E. 40, the court said:

"While it is a general rule that a deed of land bounding on a way, whether public or private, conveyes title to the center of the way if the grantor owns that far, yet the question is one of intention in view of all the circumstances. Codman v. Evans, 1 Allen, 443. Gould v. Eastern Railroad, 142 Mass. 85. Gould v. Wagner, 196 Mass. 270. It was said by Holmes, J., in Crocker v. Cutting, 166 Mass. 183, at page 185, 'The rule by which the mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor, is not an absolute rule of law irrespective of manifest intention, like the rule in Shelley's case, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used.' ''

In *City of Nashville et al. v. Lawrence et al.,* 153 Tenn. 606, 284 S. W. 882, 47 A. L. R. 1276, a case arose which in many respects resembles the one at bar. The case related, however, to a public highway, not a private road. The suit was brought for the purpose of determining the ownership of the fee in a street which the city proposed to abandon. Walnut street in the City of Nashville ran north and south and ended on the south in a cul de sac in the middle of property owned by one Lawrence who dedicated to the city a tract of land which extended Walnut street southerly to Broad street. On June 2, 1880 the owner conveyed the part of his property which was west of the dedicated street to a railroad company and the part east of the

street to a private grantee. Subsequently the railroad company acquired the land on both sides of the dedicated street. The street which had been dedicated was referred to in the deed as the "new street". A portion of the description of the lot conveyed to the railroad company was as follows: "* * * thence at right angles eastwardly 80 feet to the said new street; thence along the west side of said new street * * *". The description in the deed to the individual grantee was as follows:

"Beginning at a point on the north side of Broad street at its intersection with the east side of a continuation of Walnut street; thence eastwardly along the north side of said Broad street 75 feet to the corner of a lot said Whitworth purchased from W. D. Taber; thence northwardly with said Whitworth's line 211½ feet; thence westwardly and nearly parallel to Broad street, 75 feet to the margin of the new or Walnut street; thence southwardly 211½ feet to the point of beginning."

The court said:

"* * * The law never presumes that, in parting with his interest in the land adjoining a public way, the grantor meant to reserve the fee in the way, subject to the public easement. And hence a grant of land described as bordering "on", "along", or "by" a highway, will, by legal implication, carry the fee to the centre of the road. But this presumption, like all other presumptions, may be rebutted, and if it plainly appears, from the language used and the nature of the property, the grantor meant to limit the grant to the line of the road, and to reserve to himself the fee in the roadbed, subject to the use of it by the public as a highway, then, of course, this plainly expressed intention must prevail. * * *"

It will be observed that the description relative to the new street in the conveyance of land on the west

differed from that which appeared in the conveyance of land on the east thereof. The portion of the opinion which is significant here is as follows:

> "Certainly it was not the intention of Lawrence to include the street in the Whitworth deed and to reserve it in the railway deed. Both deeds must be construed together. Apparently they were not drafted by an expert conveyancer who expressed himself in precise and exact language." *City of Nashville v. Lawrence,* supra.

■ Since both deeds from Page to Wattenberger, though bearing different dates in July of 1937, were executed in conformity with an earlier contract, we hold in harmony with the ruling in *Nashville v. Lawrence,* supra, that both deeds must be construed together. It certainly was not the intention of the grantor to include the fee to one-half of the private way in one deed and to include none of it in the other.

■ We find it unnecessary in this case to decide whether there is the same presumption of intent to convey the fee to the center line of a private way as exists in the case of a public street. We confine our holding to the proposition indicated by the cited cases that if such presumption exists, nevertheless "an intention not to grant to the center of such way is more readily indicated than in the case of a public way".

Let us therefore consider the situation in the light of the surrounding circumstances. The deed from Page to Wattenberger conveying tract 15 is unambiguous. It expressly withholds from the conveyance the northerly 10 feet of the disputed way. The intent manifested in the deed to tract 16 is by no means as clear, yet the two must be construed together. In the ordinary case, the establishment of a private way through the lands

of an owner creates a servitude upon the owner's land for the benefit of purchasers of land abutting upon the way. Such was not the case here. The way was in use by interior owners since 1898. It became a legal way of necessity appurtenant to tract 11 when Mathes acquired it from the owner of the land which lay between the grantee and the highway. Other rights in the way may well have been acquired by adverse possession or by estoppel under the facts shown by the evidence. The defendants, in agreement with Page, straightened the way which was to the benefit of both parties, and expended substantial funds in improving it. During all these years no right accrued to any persons owning land abutting on the way because there were no abbutors. At least until 1941 all rights of whatever nature in the way belonged to Mathes, subject to the possible ownership in the fee by Page and his successor in interest, Wattenberger. This presents a situation which has not been found in any of the cases cited by the parties or which we have found. When, in March, 1941, after the death of Wattenberger, the plaintiffs took an administrator's deed to tract 16 containing the same description which appeared in the Page deed to Wattenberger, that deed gave notice of a private road, created, not for abutting property owners, but for interior owners whose rights were clear. The description was "to the southerly side of a private road from the Pacific highway to the Mathes tract" and "thence along said road". At that time there was a fence on the south side of the 20 foot roadway and the call ran to the fence. The two deeds to tracts 15 and 16 when platted by the plaintiffs' surveyor, left a gap between the two tracts of about 20 feet. The call from the south to the roadway stated the exact distance to the five tenths of a foot. The acreage granted does not appear to

include any area between the fences. The plaintiffs had access to the public highway over their own lands and needed no way of necessity. In fact, so far as the testimony shows, the plaintiffs' land was completely fenced off from the roadway. In a case such as this the presumption which applies when the owner deeds to a public highway has little or no significance. In that case he has no reason to retain a fee in the road which will probably be of no use to him in the future. In this case there is more reason to believe that the grantor intended to give the fee under the whole road to the defendants than there is to presume that he intended to give half of it to the plaintiffs, if he did not retain it himself. Before Wattenberger acquired the title, Page, through his agent, had promised to see that the defendants had a right-of-way in and out without any specification as to the lands to which the right should pertain. The defendant D. C. Mathes, who was a frank and convincing witness testified as follows:

"Q And there were no other agreements regarding maintenance or fencing; is that right?

"A No, sir, there wasn't, with the exception there was one agreement when Mr. Wattenberger went up in eastern Oregon shearing sheep every spring, and in the winter before he made his last trip up there, he says "in the spring when I come back we will get together and make a deed for that road; then there will never be any trouble over it," and he was killed while he was out shearing sheep that spring. That's the reason why there never was an actual deed made for that road."

While Wattenberger's promise to give a deed to the defendants may be too remote to be relevant to the question of the intent manifested in his deeds to the plaintiffs, it does nevertheless confirm our conclusion

that neither Page nor Wattenberger ever intended to convey to the plaintiffs the fee to the south half of the roadway when they had expressly reserved the fee to the north half.

The plaintiffs argue that even if they are not the owners of the fee in the road they may maintain an action on the basis of possession alone, but the plaintiffs were not in possession of the roadway nor does their assignment of error raise this issue.

■ The issue presented in this case is whether the trial court erred in holding that the plaintiffs own no part of the fee in the roadway. We hold that the evidence preponderates in support of the finding of the trial court.

The stipulation made in open court as set forth, supra, renders it unnecessary to consider the particular circumstances relative to the continuation of the right-of-way from the railroad track northerly over tract 22 to the highway. Under that stipulation a right having been established to use the way between tracts 15 and 16, a right "has been established to continue to the highway."

■ Again the plaintiffs argue that even if the court should find against the claim of the plaintiffs it would be powerless to give the defendants any affirmative relief by enjoining the plaintiffs from interfering with the defendants' roadway. The reason suggested is that the defendants failed to allege in their answer that the plaintiffs were threatening to invade the defendants' rights in the road. This contention is scarcely within assignment of error No. 6 but we are constrained to say that the rules of pleading do not require a defendant to allege in his answer that the plaintiff has filed a complaint seeking to enjoin the defendant from

the use of defendant's roadway. The plaintiffs' complaint sufficiently advises the court of threatened interference with the defendants' road. Defendants would add nothing by setting forth the prayer of plaintiffs' complaint in the answer. This is a typical case of a neighborhood quarrel over boundary in which counsel for the plaintiffs has displayed a degree of ability and ingenuity worthy of a better case.

The judgment of the circuit court is affirmed and the defendants will recover costs.