Argued March 2, affirmed March 23, 1960

McADAM et ux *v.* SMITH et al

350 P. 2d 689

*John F. McCarthy,* Longview, Washington, argued the cause for appellants. With him on the briefs was Joe F. Walker, Rainier.

*Paul J. Jolma,* Clatskanie, argued the cause and submitted a brief for respondents.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, O'CONNELL and HARRIS, Justices.

O'CONNELL, J.

The plaintiffs bring this suit to quiet title to certain tidelands along the Columbia river abutting upon upland title to which is vested in the plaintiffs. The defendants appeal from a decree for the plaintiffs.

At one time the upland and tideland were in separate ownership. By patent issued in 1882 Jacob S. Rinearson acquired title to the following land:

"* * * the West half of the South West Quarter. And the Lots numbered two and four of Section Thirty-four in Township Eight North of Range Three West of the Willamette Meridian in

Oregon containing One Hundred and Fifty-nine acres and Ninety Hundredths of an acre."

■ Although meander lines were run along the sinuosities of the river, the patent was effective to grant to Rinearson the title to the high-water mark of the river. *Jefferis v. East Omaha Land Co.*, 134 US 178, 10 S Ct 518, 33 L Ed 872 (1889). The land below high-water mark, including the tideland in question, was vested in the state of Oregon.

In 1890 the state of Oregon conveyed to Rinearson "All the tideland fronting and abutting upon Section Thirty Four * * * containing 1.32 acres."

In 1896 Rinearson executed a deed to the Astoria and Columbia River Railroad Company conveying the following described land:

"* * * a right of way and a strip of land one hundred feet in width, being fifty feet on each side of the center line of the railroad, of the said Railroad Company, as the same is now located, across, over and through the following described real estate, situate in County of Columbia and State of Oregon, to-wit: [describing land including Lot 4]."

In 1900 Rinearson died testate leaving all of his estate except a small parcel of land not involved in this suit to three devisees.

On April 9, 1901, the executor filed his final account reciting that the only real property belonging to the estate consisted of the land described in the patent. No mention was made of the tideland. On the same date an order was entered approving the sale by the executor of the land described, and on April 19, 1901, he executed a deed to Amos N. King which contained a description essentially the same as that set

out in the patent. By mesne conveyances the title to the land so described vested in the plaintiffs. None of the deeds in the chain of title mention the tideland, nor does the description refer in any way to the Columbia river or its bank or shore.

■ We are called upon to decide whether a conveyance of the upland without reference to a water boundary passes title to abutting tideland owned by the grantor.

There is a dictum in *Richards v. Page Investment Co.,* 112 Or 507, 228 P 937 (1924) which could be regarded as expressing the view that a conveyance of the upland, without more, does not operate to pass title to the tideland. In that case the conveyance which the court was called upon to construe described the land as "commencing on the right bank of the Willamette river, on the north side of a cottonwood tree five (5) inches in diameter and 30 feet south of the south line of block No. 11 in East Portland; thence east and parallel with the streets of said town plat, 193 feet to a point 30 feet south of the southwest corner of block No. 12; thence south on an extension of the east line of Water Street, 260 feet; thence west 164 feet to the bank of the river; thence by the bank of the river 262 feet to the place of beginning, containing 1.06 acres." The court held that the deed did not operate to convey the land between the high and the lower water mark. In so holding the court emphasized the fact that the deed used the word "bank" as one of the calls in the description, and regarded the use of that term as indicative of an intent to establish a definite line along the bank. The court said, "The bank is a fixed line, capable of definite location." 112 Or at page 519. There is authority for the view that the use of words such as "bank," "edge," "margin"

and the like indicate an intention to exclude land past the designated call. *Tuskegee Land & Security Co. v. Birmingham Realty Co.*, 161 Ala 542, 49 So 378 59 So 558 (1909); *Alameda Macadamizing Co. v. Williams*, 70 Cal 534, 12 P 530 (1886); *Rockwell v. Baldwin*, 53 Ill 19 (1869); *Cottle v. Young*, 59 Me 105 (1871); *Hunt v. Brown*, 75 Md 481, 23 A 1029 (1892); *Inhabitants of Lynnfield v. Inhabitants of Peabody*, 219 Mass 322, 106 NE 977 (1914); *People v. System Properties*, 2 NY2d 330, 141 NE2d 429, 160 NYS2d 859 (1916); *Trowbridge v. Ehrich*, 191 NY 361, 84 NE 297 (1908); *Welder v. State*, 196 SW 868 (Tex Civ App 1917); *Whittier v. Montpelier Ice Co.*, 90 Vt 16; 96 A 378 (1916); *Commissioners, Etc., King County v. Seattle Factory S. Co.*, 76 Wash 181, 135 P 1042 (1913); *Allen v. Weber*, 80 Wis 531, 50 NW 514, 27 Am St Rep 51, 14 LRA 361 (1891). The cases so holding have been widely criticized and we think, justifiably. 4 Tiffany on Real Property (3d ed), §§ 995, 996; Comment, 79 Penn L Rev 818 (1931); Note, 7 Tex L Rev 493, 502 (1929); 28 Ky L Rev 487 (1940).

But we need not concern ourselves here with the application of that rule because there is no reference in the deed before us to a part of the surface of the land which could be regarded as indicating the outside limits of the land intended to be conveyed. However, the Richards case does contain a statement which, if taken out of context, supports defendants' contention. After referring to the legislation of 1872 as amended in 1874 and 1876, which granted to the upland owners the lands in the Willamette river lying between the high and low water marks, the court said, "but no construction of those acts has made such lands merely appurtenant to the upland so that conveyance of the latter by metes and bounds would carry the

former by implication." 112 Or at page 521. As we have already indicated, the deed which the court was called upon to construe contained language which the court regarded as specifically limiting the metes and bounds description. The statement is, therefore, at most, a dictum.

In contrast to the Richards case we have *Rasmussen v. Walker Warehouse Co.*, 68 Or 316, 136 P 661 (1913) which was relied upon by the trial court as the basis for his decision. In that case the land in question was platted as an addition to the city of Bandon. The plat showed seventeen lots in the blocks bordering on the Coquille river to the north. The plat showed these lots without a line across the north side, the side lines of the lot being shown as extending to the river. The land in dispute was tideland touching the lots on the north. The court held that the conveyance of the lots carried with it a conveyance of the tidelands. The court said:

> "In order to accomplish a separation, the intention to effect it must be made distinctly to appear. If the grant is in the ordinary form bounded only by the water, the land below, as well as that above the water, will pass." 68 Or at 326.

The deed by which plaintiff in that case claimed title contained no reference to the water, the description being by reference to the plat. The defendants point out that in the Rasmussen case the plat (which becomes incorporated into the deed by reference) showed on its face that the lots were intended to extend to and under the waters of the Coquille river. We agree with the defendants' contention that the Rasmussen case is distinguishable from the Richards case and the case at bar. And, as we have already indi-

cated, we are of the opinion that the case at bar is distinguishable from the Richards case.

What then is the appropriate rule when upland bordering on tideland is conveyed without reference in the deed to the tideland or the water which affects it? We assume, of course, that the upland and tideland is in common ownership at the time of the conveyance.

■ Where the description in a deed calls for a line running to a named river, title to the bed of which is in private ownership, the conveyance is regarded as passing title to the center of the river, in the absence of evidence showing a contrary intent. *Hanlon v. Hobson,* 24 Colo 284, 51 P 433 (1897); *Kerr v. Fee,* 179 Iowa 1097, 161 NW 545 (1917); *State v. Warden,* 200 Okla 613, 198 P2d 402 (1948); *Kingsley v. Jacobs,* 174 Or 514, 149 P2d 950 (1944); *Wyckoff v. Mayfield,* 130 Or 687, 280 P 340 (1929); *State v. Superior Court,* 84 Wash 252, 146 P 609 (1915); ORS 93.310.

In the unusual circumstance where the grantor owns the entire bed but no land on the opposite shore, it would seem clear that the title to the entire bed would pass. Similar rules are applied where the description calls for a line running to a designated street, alley or, in some jurisdictions, a private way. 1 Patton, § 143, p 373. Title to the land in the street passes to the grantee; in the usual case the land up to the center line is deemed to pass: *McGee v. Swearengen,* 194 Ark 735, 109 SW2d 444 (1937); *Skrmetta v. Moore,* 202 Miss 585, 30 So2d 53 (1947); *Stockhold v. Jackson,* 136 NJL 264, 55 A2d 241 (1947); *Nickson v. Garry,* 51 N M 100, 179 P2d 524 (1947); *Buel v. Mathes,* 186 Or 160, 197 P2d 687, 205 P2d 551 (1949); *Cross v. Talbot,* 121 Or 270, 254 P 827 (1927); or where the grantor owns the entire underlying area and no land

on the opposite side of the street, all of the underlying area passes to the grantee. *Taylor v. Armstrong,* 24 Ark 102 (1863); *Watrous v. Southworth,* 5 Conn 305 (1824); *Croucher v. Wooster,* 271 Mich 337, 260 NW 739 (1935); commented upon in 14 Mich St B J 421 (1935); *In re Robbins,* 34 Minn 99, 24 NW 356 (1885); *American Steel & Wire Co. v. City of St. Louis,* 354 Mo 692, 190 SW2d 919 (1945); *Wolff v. Veterans of Foreign Wars, Post 4715,* 5 N J 143, 74 A2d 253 (1950); *Johnson v. Grenell,* 188 NY 407, 81 NE 161 (1907); *Haberman v. Baker,* 128 NY 253, 28 NE 370, 13 LRA 611 (1891); *Healey v. Babbitt,* 14 R I 533 (1884); *Gifford v. Horton,* 54 Wash 595, 103 P 988 (1909). Contra where private way is involved, *Ames v. Hilton,* 70 Me 36 (1879); *Seery v. City of Waterbury,* 82 Conn 567, 74 A 908 (1909); *Bangor House v. Brown,* 33 Me 309 (1851). See also: *Buel v. Mathes,* supra; 2 Devlin on Deeds (3d ed), §§ 1024–1026.

■ Where the description does not mention the street, river or other similar boundary but the deed describes the parcel so that, in fact, it is adjoining, the title to the bed passes the same as if the street or other boundary was expressly mentioned. *Dickinson v. Arkansas City Imp. Co.,* 77 Ark 570, 92 SW 21 (1906); *Merchant v. Grant,* 26 Cal App 485, 147 P 484 (1915); *Gear v. Barnum,* 37 Conn 229 (1870); *Bowers v. Atchison, T. & S.F. Ry. Co.,* 119 Kan 202, 237 P 913, 42 ALR 228 (1925); *Varick v. Smith,* 9 Paige's Ch R 547 (NY 1842); *Hannon v. Kelly,* 156 Wis 509, 146 NW 512 (1914); *Wegge v. Madler,* 129 Wis 412, 109 NW 223 (1906). See: *Norcross v. Griffiths,* 65 Wis 599, 27 NW 606 (1886).

Various reasons have been given for the recognition of a presumption that a conveyance of the upland passes title to land in the bed of the river or way.

Where the river or way is mentioned in the description it is sometimes said that the grantee takes to the center line because a call of a line to a monument normally runs the line to the center of the monument. *Freeman v. Bellegarde,* 108 Cal 179, 41 P 289, 49 Am St Rep 76 (1895); *Boston v. Richardson,* 95 Mass (13 Allen) 146 (1866); *Sleeper v. Laconia,* 60 N H 201 (1880); *Vanderbilt University v. Williams,* 152 Tenn 664, 280 SW 689 (1926). See: 1 Patton on Titles (2d ed), § 143, p 370; 4 Tiffany on Real Property (3d ed), § 995. However, most courts have looked for a sounder basis upon which to rest the rule. Thus it is said that the title to the bed should be held to pass in order "to prevent the existence of innumerable strips and gores of land, along the margins of streams and highways, to which the title, for generations, shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in express terms provided for in the title deeds, a bootless, almost objectless, litigation shall spring up, to vex and harrass those, who in good faith had supposed themselves secure from such embarrassment." *Buck v. Squiers,* 22 Vt 484 (1850) (dissenting opinion), at page 494. *Earhart v. Rosenwinkel,* 108 Ind App 281, 25 NE2d 268 (1940); *Luce v. Carley,* 24 Wendell 451, 35 Am Dec 637 (NY 1840); *Lembeck v. Nye,* 47 Ohio St 336, 24 NE 686 (1890). See: 4 Tiffany on Real Property, § 995.

The trial judge relied in part upon this policy in reaching his decision. And it is occasionally pointed out that such isolated strips are ordinarily of much greater value to the adjoining or upland owner than they are to the grantor who has no other abutting land and, therefore, it may be assumed that the grantor did not intend to reserve his title to them. *Henry v. Dio-*

*cese of Kentucky,* 207 Ky 846, 270 SW 476 (1925);
*Schneider v. Jacob,* 86 Ky 101, 5 SW 350 (1887); *Kimball v. The City of Kenosha,* 4 Wis 321 (1855). See:
*White v. Jefferson,* 110 Minn 276, 124 NW 373, 125
NW 262 (1910); *Matter of City of New York,* 212 NY
325, 106 NE 102 (1914); Note, 28 Ky L J 487 (1940).
The principal value to the upland owner is usually
in having access to the water as a riparian owner.
*Stuart v. Fox,* 129 Me 407, 152 A 413 (1930); *Rio
Bravo Oil Co. v. Weed,* 121 Tex 427, 50 SW 2d 1080,
85 ALR 391 (1932). This same ground is commonly
used in cases holding that accretions should inure to
the upland owner so that he may continue to be an
owner of riparian land. Other reasons have been advanced to justify the presumption that a conveyance
of the upland carries title to land lying in the bed
of an abutting stream, street or other way. See 1 Patton on Titles (2d ed), § 143.

■ We believe that the reasons summarized above
are applicable where the land abutting the upland is
tideland rather than the land in the bed of a stream or
a public or private right of way. We are aware of the
fact that tideland, unlike the bed of a stream or the
bed of a roadway, may be susceptible to separate
uses, particularly those incident to navigation or to
other uses of the water, as for example the rafting,
booming or dumping of logs. But the question is
whether such separate uses are so common that we
should presume that a grantor who retains no abutting
land normally contemplates such future uses and,
therefore, ordinarily intends to reserve his rights in
the tideland upon a conveyance of the abutting upland.
We do not think that the probability of these uses is
significant enough to distinguish conveyances involving abutting tideland from those involving the beds

of streams and ways; in both situations it is reasonable to presume that the abutting land was intended to pass with a conveyance of the upland and the policy considerations mentioned above are equally applicable to both types of transactions.

The defendants make a point of the fact that in the case at bar a strip in which a third person has an interest separates the upland from the tideland. They state that the railroad, which was built along the strip granted to the railroad company, is constructed on a steep embankment, the outer or river edge of which coincides with or is slightly below the line of ordinary high tide. The plaintiffs, on the other hand, contend that the railroad right of way at no point reaches the high tide line. It is not contended by the defendants that the water side of the strip was described in the conveyance to the railroad company as coincident with the high tide line. It is clear that at least at some points the railroad company's strip does not reach the high tide line, and consequently the grantor at these points retained land on both sides of the intervening strip. But the defendants contend that the presence of the intervening strip makes inapplicable the presumption relied upon by plaintiffs, which favors the passage of title to submerged lands upon a conveyance of the upland. Defendants put their point vividly by asserting that the presumption is not "equipped with wings or other means of locomotion so that it can jump over an intervening tract of land owned by a third person." (For the purposes of this case we shall assume, without deciding, that the deed to the railroad company created in it an estate rather than easement. See, however, 30 Ore L Rev 380 (1951)).

■ We are unable to understand how the creation in

the railroad company of an interest in the intervening strip can in any way indicate the grantor's intention to convey or withhold his interest in the tideland. See *Croucher v. Wooster*, 271 Mich 337, 260 NW 739 (1935). If Rinearson had conveyed his entire interest in the eastern part of his lot (i.e., the part abutting the tideland) to a third person it would be reasonable to assume that the tideland was intended to pass with the upland. Whether that would be true where an estate is conveyed to a railroad company for purposes of a right of way we need not decide. In the case at bar the conveyance of the strip to the railroad company left the grantor still the owner of a part of Lot 4 which abutted on the tideland. The case is no different than it would be if the strip conveyed ran through the center of Lot 4 or along the western side of the lot farthest from the water. If there is a presumption that the tideland is intended to pass with the upland, the presumption loses none of its force merely because a part of the non-abutting land is carved out of the upland parcel.

Plaintiffs rely upon ORS 93.310(5) which reads as follows:

"93.310 *Rules for construing description of real property.* The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:

"* * * * *

"(5) When the tide water is the boundary, the rights of the grantor to low water mark are included in the conveyance, and also the right of this state between high and low water mark."

It is not clear from this subsection whether the presumption was intended to apply in all cases where

tide water was contiguous to the upland or only where the body of tide water was mentioned in the conveyance as one of the boundaries. Although no mention of tide water is made in the patent, the line which bounds the upland on the river side is the high watermark. In this sense then the upland is bounded by tide water.

■ It will be noted that the statute recognizes a presumption that the conveyance passes title to the low water mark "when tide water is the boundary." The statute is not limited in terms to the situation where tide water is *described* as the boundary. We think that the statute should be given the broader meaning and that the presumption should be recognized in cases where the upland abuts tidewater, although not expressly so described in the deed. We believe that such a construction comports with the intention of the grantor in most cases and, in addition, carries out the policy considerations mentioned above. In the case at bar there was no substantial evidence to negative the presumption.

For the foregoing reasons we are of the opinion that the decree of the lower court should be affirmed.

Decree affirmed.