Argued and submitted September 10, 2012, reversed and remanded as to plaintiffs' claim for quiet title, plaintiffs' and defendants' respective claims for declaratory relief, and the statutory cost award; otherwise affirmed January 29, 2014

## William J. HOWE, III;
## Marvin J. La Porte;
## and Susan J. La Porte,
### *Plaintiffs-Appellants,*

*v.*

## Jonathan GREENLEAF
## and Wesley A. Lewis,
### *Defendants-Respondents.*

Clackamas County Circuit Court
CV09050374; A146060

320 P3d 641

George W. Kelly argued the cause and filed the briefs for appellants.

Jonathan M. Radmacher argued the cause for respondents. With him on the brief for respondent Wesley A. Lewis was McEwen Gisvold, LLP. Thomas W. Sondag and Lane Powell PC filed the brief for respondent Jonathan Greenleaf.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Hadlock, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

This case involves a dispute between landowners about their respective ownership rights in a vacated Clackamas County road—Skyland Drive. Defendants are owners of lots within a platted subdivision that contained the original dedication of Skyland Drive. Plaintiffs own parcels of property located across Skyland Drive from defendants' lots, but plaintiffs' parcels were not part of the platted subdivision. Plaintiffs claim that they are the legal owners up to the centerline of the vacated roadway that abuts their parcels because, at the time of the dedication of the road, the same owners held title to both defendants' and plaintiffs' property. Plaintiffs also sought to enjoin defendant Lewis from violating a 1982 easement agreement. The trial court concluded that defendants hold title to the entire width of the vacated road, rejected plaintiffs' other theories of ownership, and denied plaintiffs' request for injunctive relief. For the reasons set forth below, we reverse and remand to the trial court to quiet title to the disputed property in plaintiffs. However, we affirm the trial court's rejection of plaintiffs' claims based on the easement agreement and the concomitant award of attorney fees to defendants.[1]

The following background facts are undisputed and entirely based on the recorded instruments that make up the chain of title to the parties' respective properties. Any additional facts necessary to our opinion are set out in the discussion of plaintiffs' assignments of error. In 1949, Ferry and Cora Smith purchased 36 acres of land in Clackamas County, Oregon. In 1950, the Smiths recorded a plat map for a subdivision called "The Skylands of Oswego," which included only a portion of the 36 acres. In the plat map, the Smiths dedicated the roads in the subdivision to Clackamas County, including Skyland Drive, which runs in a curve to form part of the eastern and northern boundaries of the subdivision. Lot 1 in the subdivision, which has since been further subdivided, is owned by defendants Lewis and Greenleaf. Plaintiffs, Howe and LaPorte, own parcels that are located to the east and north of Skyland Drive, which

---

[1] The trial court's award of statutory costs to defendants was not limited to the easement-agreement claims and, thus, we also reverse and remand the cost award for further proceedings.

were part of the original 36 acres owned by the Smiths but were not part of the subdivision. The area in dispute is the area to the centerline of Skyland Drive that abuts plaintiffs' properties. The juxtaposition of the parties' properties is roughly as is shown on the following map:[2]

In May 1969, Clackamas County vacated the dedication of the southern portion of Skyland Drive, which had never been developed into a road. Skyland Drive instead ended in a cul-de-sac turnaround, which is depicted in the above map and was formed in part by a small crescent-shaped piece carved out of a 1953 transfer for "turnaround purposes" from the Smiths to the Linns, predecessors in interest to Howe. The crescent-shaped piece was outside the subdivision boundaries, bordered Skyland Drive, and otherwise was surrounded by the property conveyed to the Linns. In 1958, the Smiths conveyed the crescent-shaped piece to the "public" for "road purposes." In 1981, the then-owners of Lot 1 attempted to again convey that piece to Clackamas

[2] The map is not to scale and does not depict the details of the parties' respective parcels. It is included only as an aid to the reader.

County for "road purposes." At the time of the 1969 vacation order, Lot 1 was owned by either Tarola or the Smiths,[3] tax lot 600 was owned by the Steidles, and tax lot 700 was owned by the Smiths.

In December 1982, Clackamas County vacated the remainder of the portion of Skyland Drive to which the parties' parcels abut. At the time of the 1982 vacation, Lot 1 was owned by the Caffalls, tax lot 600 was owned by the Freemans, tax lot 700 was owned by Byles, and the LaPorte property was owned by the Keggs. Howe obtained title to tax lot 600 in 1988 and tax lot 700 in 1989. LaPorte obtained title to his property in 1993. Lewis obtained title to Lot 1 in 1992 and 1996, and sold a portion of Lot 1 to Greenleaf in 2008.

Before Clackamas County issued its 1982 vacation order, Lot 1 had been transferred solely by reference to lot number as follows: "Lot One (1), SKYLANDS OF OSWEGO." Before the 1982 vacation, with the exception of tax lot 700, the properties that would make up plaintiffs' respective parcels were described by metes and bounds with reference to the right-of-way line of Skyland Drive as a boundary. Tax lot 700 was transferred in 1982 from Cora Smith's estate to Byles by reference to section, township, and range as "[a] certain 0.47 acres" and "also known as Tax lot 700." The tax lot maps show tax lot 700 as being bound by the vacated Skyland Drive.

Also in 1982, the landowners who owned property abutting the 1982 vacated portion of Skyland Drive, including the predecessors in interest to plaintiffs' parcels, entered into a "Grant of Mutual Private Roadway and Utilities Easement." The main purpose of the easement agreement was to grant a reciprocal easement to each abutting landowner to use the vacated roadway for access and utilities. Recital C in the agreement provided:

"The Declarants have filed before the Board of County Commissioners of Clackamas County, Oregon a petition

---

[3] Defendants disputed below that Tarola owned Lot 1 at the time of the 1969 vacation, arguing that the transfer was an invalid gift deed from Cora Smith to her daughter. Because the ownership of Lot 1 at the time of the vacation order is not pertinent to our decision, we do not express any opinion on whether the 1968 deed to Tarola was valid.

for the vacation of the Private Roadway. As a result of the vacation, the ownership of portions of the Benefited Parcels within and to the center line of the Private Roadway will revert to the Declarants."

This litigation arose when Lewis subdivided Lot 1 in 2008. Lewis originally sought to include the entire width of the vacated Skyland Drive in the area to be subdivided. Plaintiffs asserted, however, that they owned up to the centerline of Skyland Drive (the disputed area) and initiated this litigation. Plaintiffs sought to quiet title in their favor in half of Skyland Drive based on ORS 93.310(4) and ORS 368.366, which provide rules of construction for real property conveyances and vesting rules upon vacation of public property, respectively. Plaintiffs argued that, because the Smiths had owned all of the parties' respective parcels at the time that Skyland Drive was dedicated and because none of the deeds of conveyance from the Smiths indicated an express intention *not* to convey to the centerline of Skyland Drive with the adjoining parcels, those statutes operated to vest title in plaintiffs to the center of Skyland Drive. Alternatively, plaintiffs sought to estop defendants from claiming an interest in the disputed area of the 1982 vacation based on Recital C in the easement agreement and ORS 42.300,[4] and Howe sought to gain title to the disputed area from the 1969 vacation through adverse possession. Plaintiffs also sought an injunction against Lewis to prevent him from taking future actions that would violate a provision in the easement agreement that requires consent from all easement holders before structures can be placed in the easement area.

Defendants counterclaimed for a declaration that plaintiffs did not own any interest in Skyland Drive. Defendants argued that the Smiths did express their intention not to convey to the centerline of Skyland Drive to plaintiffs based on the exclusion of plaintiffs' parcels from the platted subdivision that created Skyland Drive and based on the property descriptions transferring tax lot 600 and tax

_____
[4] ORS 42.300 provides:

"Except for the recital of a consideration, the truth of the facts recited from the recital in a written instrument shall not be denied by the parties thereto, their representatives or successors in interest by a subsequent title."

lot 700 from the Smiths to Howe's predecessors. Defendants also argued that (1) plaintiffs' estoppel claim failed because the recital in the easement agreement was not material to the agreement, (2) Howe could not establish the elements for adverse possession, and (3) plaintiffs were not entitled to injunctive relief based on the easement agreement.

After a bench trial, the trial court found for defendants on each of the parties' respective claims. With respect to plaintiffs' quiet title and declaratory relief claims, the trial court concluded that, by platting only a portion of the property that they owned, "the Smiths understood, and intended, that the nature of their ownership in the platted portion would be qualitatively somewhat different from their ownership of the rest of the tract." The trial court concluded:

> "This platting process clearly indicated an intent on the part of the Smiths to separate their fee ownership in the land within the boundary of the plat, from their fee ownership of land surrounding, but outside the plat. *Conceptually, this was analogous to a conveyance by the Smiths, albeit to themselves, of the platted portion of their land to be held in a different fashion from that land outside the plat.* The location of the plat boundary is evidence of an intent as to how the land within and without the platted area would be ultimately conveyed, as well as having independent legal significance.

> "* * * * *

> "It is only by ascribing no legal significance to the plat boundary of The Skylands of Oswego that Plaintiff's position can have any vitality. I do not believe ignoring the plat boundary is legally tenable. *As stated above, the platting process and creation of that boundary changed the nature of the Smith's ownership of the property within the plat versus their ownership of their land outside the boundaries of the plat.* I believe the location of the dedicated roadway for Skyland Drive entirely within the plat of The Skylands of Oswego, by analogy places our situation within the third example of the application of the common law in the quotation from *Neil* [*v. Independent Realty Co.*, 317 Mo 1235, 298 SW 363 (1927),] above, and within the operation of ORS 368.366(1)(c).

> "*The 1950 platting process essentially created distinct parcels of property though in common ownership.* The

entirety of Skyland Drive was within but one of those parcels. There is no evidence, in any of the subsequent conveyances of import, that suggests any intention to convey any property within the platted parcel as part of a conveyance of property outside the platted parcel. That would be a necessary factual circumstance to overcome the earlier expression of intent evidenced by the platting process, if Plaintiff's position were to be sustainable."

(Emphases added.) As the emphasized language indicates, the court concluded that the platting process essentially put the subdivision under different ownership from the Smiths' remaining parcels such that the entirety of Skyland Drive was dedicated from, and thus owned by, the owners of the subdivision lots only. The court further concluded that two subsequent transfers by the Smiths further indicated their intention that the entire width of Skyland Drive would transfer with the subdivision lots—the 1953 deed to Howe's predecessors, the Linns, which carved out the crescent-shaped piece for turnaround purposes, and the 1982 transfer of tax lot 700 describing that lot as consisting of "0.47 acres," a size description that would not have included to the centerline of Skyland Drive.

The trial court also concluded that the 1982 easement-agreement recital could not convey the disputed area to plaintiffs and that the recital was "simply wrong." The court held that the recital reference to ownership to the centerline of Skyland Drive was not material to the agreement "and did not constitute an admission or representation of a nature that it should give rise to the preclusive application of [ORS 42.300]." With respect to Howe's adverse-possession claim, the court held that

"[p]laintiff's proof in support of that claim is simply insufficient to meet his burden. Plaintiff Howe's modest use of the property has not truly been possessory in nature, and certainly has not been openly, notoriously, exclusively, hostilely, and continuously so, for any ten year period. There has been no conduct of a character sufficient to put the true owner on notice of Plaintiff Howe's adverse occupancy of the land."

Finally, with regard to plaintiffs' claim for injunctive relief, the court concluded that "there is currently simply no

justiciable controversy and there has been no showing of irreparable harm to the Plaintiffs to support injunctive relief." The trial court entered a general judgment quieting title to the disputed area to defendants and dismissing plaintiffs' remaining claims. The court also entered a supplemental judgment awarding statutory costs to defendants as the prevailing parties and awarding attorney fees to defendants on plaintiffs' claims under the easement agreement.

Plaintiffs appeal both the general judgment and the supplemental judgment, assigning error to the trial court's denial of each of their claims, and raise essentially the same arguments on appeal that they presented to the trial court.

In an action to quiet title, "plaintiffs must prove that they have a substantial interest in, or claim to, the disputed property and that their title is superior to that of defendants." *Coussens v. Stevens*, 200 Or App 165, 171, 113 P3d 952 (2005), *rev den*, 340 Or 18 (2006). "Plaintiffs in a quiet-title suit need not show that their title is good as against all the world; rather they meet their burden of proof when they show a title which is superior to that of the defendant who has asserted an adverse claim." *Rohner et ux v. Neville*, 230 Or 31, 38, 365 P2d 614 (1961). We must determine whether plaintiffs have established as a matter of law and uncontroverted fact that their title is superior to that of defendants. In doing so, "[o]ur task is to discern and effectuate the intent of the grantor as evinced in the documents of conveyance and surrounding circumstances." *Coussens*, 200 Or App at 172. Because the parties' arguments about the Smiths' intent are based on the language in the recorded conveyances, we decide that intent as a matter of law, not of fact. *Fossi v. Meyers*, 271 Or 611, 615, 533 P2d 337 (1975) ("At least when the evidence of the conveying party's intention is the language in the conveyance, the party's intention is not to be decided as a question of fact.").

Our analysis begins with ORS 93.310(4), which provides:

"The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:

"* * * * *

"(4)  When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title."

That section of the statute has remained unchanged since its enactment in 1862 and has been recognized by the Supreme Court as a codification of common-law principles. *See* General Laws of Oregon, Civ Code, ch X, title I, § 845 pp 358-59 (Deady ed 1845-1864); *Buel et ux. v. Mathes et ux.*, 186 Or 160, 185, 205 P2d 551 (1949).

The Supreme Court has held that the presumption in ORS 93.310(4) applies whenever the conveyance describes property that borders on a road, whether the property description expressly names the road as a boundary; whether the property is described in metes and bounds, such that it borders the road but the road is not expressly named in the conveyance; or whether the conveyance is by reference to a map that shows the road as a boundary. *Buel*, 186 Or at 185; *see also Fossi*, 271 Or at 613, 615 (metes and bounds); *Fahey v. City of Bend*, 252 Or 267, 269, 449 P2d 428 (1969) (platted lots); *Cross v. Talbot et al.*, 121 Or 270, 273, 276, 254 P 827 (1927) (metes and bounds) (restricting to its facts contrary language in *Lankin v. Terwilliger*, 22 Or 97, 29 P 268 (1892)). Further, the Supreme Court has held that title to half the road continues to presume to pass with the conveyance of an abutting property whether the conveyance is made while the road is in existence or after the abutting road is vacated. *Fahey*, 252 Or at 269-70.

The presumption in ORS 93.310(4) is a strong one that is rebutted only by an express provision in the conveyance excluding the abutting road, or by the grantor's clear intention to exclude the abutting road from the conveyance as discerned from the circumstances of the transaction. *Fossi*, 271 Or at 615; *Cross*, 121 Or at 273. The basis for this strong presumption is "the view that the seller of land could ordinarily have no object in retaining a narrow strip of land which is subject to the rights of others and which would be of no value to him when separated from adjoining property"

and to avoid vexatious litigation that would arise should title to the strip remain with the original owner. *Buel*, 186 Or at 186.

Also following the same principles is the statute governing the reversion of interest in a vacated county road, on which plaintiffs also rely. ORS 368.366[5] provides, as relevant:

"(1) When a county governing body vacates public property under ORS 368.326 to 368.366, the vacated property shall vest as follows:

"* * * * *

"(c) Unless otherwise described in paragraph (a) or (b) of this subsection, the vacated property shall vest in the rightful owner holding title according to law.

"(d) Except as otherwise provided in this subsection, the vacated property shall vest in the owner of the land abutting the vacated property by extension of the person's abutting property boundaries to the center of the vacated property."

Thus, upon vacation of a county road, that statute confirms that the presumptions in ORS 93.310(4) continue to apply to ensure that a vacated road does not revert to the original dedicator, but is transferred to the abutting landowners, either by showing "title according to law" or by default to the abutting properties to the centerline.

There is a generally recognized exception to the common-law presumption codified in ORS 93.310(4) and ORS 368.366(1)(d). That exception is that, where the dedicated road runs between two tracts of land under different ownership and the road was wholly dedicated from only one

---

[5] At the time of the 1969 vacation, a similar prior statute was in effect, which provided:

"(1) A vacated lot or tract shall vest in the rightful owner who has the title thereof according to law.

"(2) A vacated road, highway, street or alley shall be attached to the lots or ground bordering thereon and all right or title thereto shall vest in the persons owning the property on the side thereof, in equal proportions, according to the length or breadth of such lots or ground as the same may border on such road, highway, street or alley."

*Former* ORS 271.060 (1967), *repealed by* Or Laws 1981, ch 153, § 79.

of the owners' tracts, then the entire width of the road transfers with the abutting property from which it was wholly dedicated. *See, e.g., McAdam et ux v. Smith et al*, 221 Or 48, 54-55, 350 P2d 689 (1960) (discussing generally held rules of construction); *Christian v. Purdy*, 60 Wn App 798, 801, 808 P2d 164, 165-66 (1991) (same); *Neil v. Independent Realty Co.*, 317 Mo 1235, 1241, 298 SW 363, 365 (1927) (same). Although we are aware of no Oregon cases expressly adopting that exception for roadways, ORS 93.310(4) and ORS 368.366(1)(c) also provide for it by including the exception to the general presumption "where the road or bed of the stream is held under another title" and that "the vacated property shall vest in the rightful owner holding title according to law."

In summary, the general presumption that title to the centerline of a road transfers with the abutting property does not apply in only two circumstances: (1) When, at the time of conveyance of the abutting property, the road is held under another title from that of the grantor or (2) when the grantor clearly does not intend to convey title to the centerline of the road as that intention appears from an express provision in the conveyance or the circumstances surrounding the transaction.

Turning to the relevant conveyances from the Smiths at issue in this case, the default presumption in ORS 93.310(4) would result in both plaintiffs and defendants taking title to the centerline of Skyland Drive. Cora Smith transferred Lot 1 to Tarola, and after it was transferred back, to Caffall, both of which conveyances referred solely to the lot number—"Lot One (1), SKYLANDS OF OSWEGO"—which is a reference to the plat map that shows that Skyland Drive is a boundary to Lot 1, and not a part of Lot 1. The 1953 conveyance from the Smiths to the Linns, Howe's predecessor in interest to tax lot 600, described the property according to metes and bounds using Skyland Drive as a boundary. Likewise, the 1973 conveyance from Cora Smith to the Keggs, LaPorte's predecessor in interest, described the property according to metes and bounds using Skyland Drive as a boundary. The 1982 conveyance from Cora Smith's estate to Byles, Howe's predecessor in interest to tax lot 700, described the property by section, township,

and range as that "certain 0.47 acres" and "also known as Tax Lot 700." The tax maps show tax lot 700 as bordering the vacated Skyland Drive. None of those conveyances contains an express provision excluding Skyland Drive from the conveyance; they only provide that Skyland Drive is a boundary to the property being conveyed. Based on those conveyances, the presumption in ORS 93.310(4) would control and result in plaintiffs obtaining title to the centerline of the portion of Skyland Drive abutting their properties. This case, thus, hinges on the effect of the subdivision plat map that contained the entire dedication of Skyland Drive, and to which we now turn.

Defendants argue, and the trial court agreed, that this case most closely resembles the common-law exception to the general rule that, where the road runs between two tracts of land under different ownership, but was wholly dedicated from only one of the owners' tracts, then the entire width of the street transfers with the abutting property from which it was wholly dedicated. We disagree with that conclusion.

The common-law exception to the general presumption was created to address the situation where properties on opposite sides of a road are under different ownership and the road is dedicated from land owned by only one of those owners. That exception to the general rule makes sense because it avoids the possibility of taking a valuable property right from one party (the underlying fee ownership of the road) and giving it to another party who otherwise has no claim to it. *See Neil*, 317 Mo at 1253-54 298 SW at 371 (discussing potential takings implications). That situation is not presented here, and the ills that the exception addresses are not implicated. At the time that Skyland Drive was dedicated, the Smiths owned all of the property on *both* sides of the road and owned the entire fee underlying the road. The Smiths were later free to dispose of the fee of the road through the presumption conveying to the centerline or by expressly providing for it in the deeds.

The creation of any dedicated road through the property of a single owner has the practical effect of creating distinct parcels, although in common ownership, on

both sides of the dedicated road. That effect occurs whether the road is created through a subdivision plat or some other device. The mere use of the plat to create Skyland Drive did not change the fact that the Smiths contributed all of the property from their original 36 acres to create the road, the road provided access for all the parcels on both sides of the road, and the Smiths retained title ownership of all the parcels abutting the road. We cannot conclude, as the trial court did, that the recordation of the subdivision plat somehow constructively placed plaintiffs' and defendants' parcels under different ownership even though no conveyance of any property was effected by that recordation.

The recordation of that plat map also does not demonstrate a clear intention to rebut the statutory presumption. Nothing about recording the plat map demonstrated that the Smiths intended the entire width of Skyland Drive to be conveyed with Lot 1. While the plat map defined the location of Skyland Drive, it did not contain any provision that addressed the fee ownership of Skyland Drive with respect to the subdivision lots, or any other parcel of property. We emphasize in response to arguments made by defendants that the "subdivision" did not come to own anything through the recording of the plat map; the Smiths were title owners of all the property at issue here both before and after they recorded the plat map subdividing their property. We have been able to locate only one case that addressed circumstances similar to those presented here, and it is consistent with our approach. *See Christian*, 60 Wn App at 801-02, 808 P2d at 166 ("The record demonstrates only that the dedicator intended to exclude the Christians' property from Ottesen's Plat. Such evidence is insufficient, standing alone, to rebut the presumption that his property extends to the center of the vacated street.").

Defendants also make several additional arguments that they contend demonstrate the Smiths' intention that none of Skyland Drive would transfer with plaintiffs' parcels. We address each of those arguments in turn.

First, defendants argue that a decision that recognizes that plaintiffs own to the centerline of Skyland Drive would result in an impermissible replatting of the

subdivision. Defendants do not cite to any authority supporting their argument, and we reject it. Plaintiffs' ownership to the centerline of Skyland Drive does not change the subdivision boundaries. A person can legally own contiguous property located both within and without a subdivision boundary without having to apply to the county for a replat of the subdivision.

We next address defendants' argument relative to the transfer of tax lot 700, on which the trial court also relied as further evidence of the Smiths' intention not to convey any of Skyland Drive to parcels not contained within the subdivision. In 1982, Cora Smith's estate transferred tax lot 700 to Byles and described the property by section, township, and range as that "certain 0.47 acres" and "also known as Tax Lot 700." Defendants argue that the use of the exact acreage in the deed expressed a clear intention that none of the 1969 vacated portion of Skyland Drive would transfer with that parcel. Defendants also argue that the title to Lot 1 and tax lot 700 merged in the Smiths after 1969, such that the 1969 vacated portion of Skyland Drive ceased to exist as a separate parcel to which the statutory presumption could attach.

We are hard pressed to understand how the 1982 transfer of tax lot 700 out of *Cora Smith's estate* (which was transferred in a single deed with many other properties held by the estate) could demonstrate that *the Smiths* expressly intended, at the time of the dedication of Skyland Drive, to retain ownership of the entire width of Skyland Drive as part of Lot 1 by recording the plat map. That is particularly so under the circumstances here because Cora Smith had previously transferred Lot 1 to Caffall only by reference to the plat map and without any provision addressing ownership of the previously vacated road, which, by statutory presumption, would convey only to the centerline of Skyland Drive. ORS 93.310(4); ORS 368.366(1)(d).

Additionally, the description of tax lot 700 as consisting of .47 acres does nothing more than to more particularly describe the property because a surveyed metes and bounds description was not used. The failure of the deed to expressly include the vacated portion of Skyland Drive in

the acreage description tells us nothing about the grantor's intent. Cora Smith's prior conveyance of Lot 1 also did not expressly include any of the vacated road. For us to conclude that tax lot 700 does not include any of the vacated road because the description did not expressly include it, while at the same time concluding that Lot 1 does include all of the vacated road even though the description also does not expressly include any of it, would be logically inconsistent and contrary to ORS 93.310(4) and our prior case law.

Those circumstances also dispose of defendants' merger argument because, if the law operates as suggested by defendants, then the 50 foot strip of vacated Skyland Drive abutting tax lot 700 would still be owned by Cora Smith's estate because neither the deed to Caffall of Lot 1, nor the deed to Byles of tax lot 700, contained an express transfer of that property. As discussed above, the statutory presumptions and common-law principles governing property transfers are in place to avoid precisely those circumstances after a road is vacated. *See Fahey*, 252 Or at 269 (holding that presumption applies whether the conveyance is made while the road is in existence or after it is vacated).

We next address the 1953 transfer from the Smiths to the Linns, which carved out from the conveyance a small crescent-shaped piece of land for "turnaround purposes." Defendants argue, and the trial court agreed, that the holding back of that piece, which lies between a portion of Howe's property and Skyland Drive, evidenced the Smiths' intention not to convey any of Skyland Drive to the Linns and, thus, evidenced the broader intention of the Smiths not to convey any of Skyland Drive with any parcel not contained within the subdivision. In the deed to the Linns, the Smiths expressly created the curve in the legal description for "turnaround purposes," changing the shape of the prior-dedicated Skyland Drive. The Smiths intention was further confirmed by the 1958 deed of that piece from the Smiths to "the public" for "road purposes." Later, in 1981, the Caffalls (owners of Lot 1) attempted again to convey the piece to Clackamas County for "road purposes."

The Smiths' hold back of the small crescent-shaped piece for the express purpose of changing the shape of a

public road is not a clear expression of the Smiths' intention not to include *any* of that public road in the conveyance to the abutting property, and certainly is not a clear expression of a broader intention not to convey any of Skyland Drive to other parcels not within the subdivision. As set forth above, to rebut the statutory presumption, the conveyance must contain a clear expression of the grantor's intention not to transfer the abutting road with the conveyance. The deed to the Linns contained only an express provision to create a road turnaround; it did not contain a provision relative to the prior-dedicated road. Under those circumstances, the general presumption of conveyance to the centerline of Skyland Drive continues to apply. *See McAdam*, 221 Or at 58-59 (discussing that an intervening strip conveyed by the grantor to the railroad did not indicate an intention with regard to the conveyance of abutting tideland).

With regard to the crescent-shaped piece itself, which the parties do not appear to dispute that Howe owns, it vested in Howe's predecessor as part of the portion of the road extending to the centerline when the street was vacated. The crescent-shaped piece was never part of the title to "Lot 1" because it is located outside the subdivision boundaries, so it cannot vest in defendants. ORS 368.366(1)(d) provides, "Except as otherwise provided in this subsection, the vacated property shall vest in the owner of the land abutting the vacated property by extension of the person's abutting property boundaries to the center of the vacated property." ORS 368.366, and the common-law principles on which it is founded, specifically seek to avoid a vacated road vesting back to the original dedicator who no longer owns any abutting property, which would otherwise be the result here. Accordingly, we adhere to the policy adopted by the legislature to apply in these circumstances. *See, e.g., Nelson v. Vandemarr*, 281 Or 65, 70, 573 P2d 1232 (1978) (recognizing the policy against "construing conveyances so as to create 'strips of land the title to which would otherwise remain in abeyance for long periods of time'").

Because we conclude that title should be quieted in plaintiffs to the centerline of Skyland Drive, we need not reach plaintiffs' third assignment of error, which addressed

the trial court's denial of Howe's claim of adverse possession of the 1969 vacated portion of Skyland Drive. However, we do write to briefly address plaintiffs' other assignments of error because they bear on whether plaintiffs also are entitled to a reversal of the attorney-fee award to defendants.

The trial court concluded that the attorney fee provision in the 1982 easement agreement entitled defendants to an allocated award of attorney fees for time spent litigating plaintiffs' easement-agreement claims. Plaintiffs have assigned error to the trial court's grant of attorney fees and costs to defendants and argue that that award must be reversed and remanded if we reverse the trial court's judgment under any of their assignments of error. Plaintiffs rely solely on ORS 20.220(3), which provides:

"When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates:

"(a)  If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed; or

"(b)  If the appellate court modifies the judgment such that the party who was awarded attorney fees or costs and disbursements is no longer entitled to the award, the party against whom attorney fees or costs and disbursements were awarded may move for relief under ORCP 71 B(1)(e)."

Because the trial court awarded attorney fees to both defendants based on the attorney fee provision in the 1982 easement agreement, defendants argue that plaintiffs are entitled to a reversal of both defendants' attorney fee award only if we reverse the judgment based on plaintiffs' second assignment of error—the estoppel claim based on the recital in the 1982 easement agreement—or a reversal of only Lewis's award if we reverse based on plaintiffs' fourth assignment of error—the injunction claim against Lewis based on the 1982 easement agreement.

We conclude that defendants state the correct view on the assignments of error on which plaintiffs must prevail on appeal in order to be entitled to a reversal of the attorney fee award to defendants. *See ZRZ Realty v. Beneficial*

*Fire and Casualty Ins.*, 349 Or 117, 150 n 31, 241 P3d 710 (2010), *adh'd to as mod on recons*, 349 Or 657, 249 P3d 111 (2011) ("Because the part of the trial court's judgment that the Court of Appeals reversed does not relate to the awards of attorney fees, ORS 20.220(3) did not require the Court of Appeals to reverse and vacate the fee awards."). Accordingly, we now address those additional assignments of error, which we affirm.

The parties have not requested that we exercise our discretion to review *de novo* the facts related to plaintiffs' equitable claims of estoppel or injunctive relief, and we decline to do so. *See* ORS 19.415(3)(b). Accordingly, we review the trial court's legal conclusions for legal error and are bound by the trial court's findings of fact if supported by any evidence in the record. *Eagles Five, LLC v. Lawton*, 250 Or App 413, 416 n 2, 280 P3d 1017 (2012).

Plaintiffs' estoppel claim is based on the following recital in the 1982 easement agreement:

"The Declarants have filed before the Board of County Commissioners of Clackamas County, Oregon a petition for the vacation of the Private Roadway. As a result of the vacation, the ownership of portions of the Benefited Parcels within and to the center line of the Private Roadway will revert to the Declarants."

The trial court concluded that the recital could not convey the disputed area to plaintiffs and also found that the recital was "simply wrong" with respect to plaintiffs' parcels. The court also concluded that the recital's reference to ownership to the centerline of Skyland Drive was not material to the creation of the mutual easements in the agreement "and did not constitute an admission or representation of a nature that it should give rise to the preclusive application of [ORS 42.300]."

As an initial matter, our decision under plaintiffs' first assignment of error renders the trial court's conclusion—that the recital in the 1982 easement agreement was "simply wrong"—unsupported by any evidence. The recital correctly states that ownership to the centerline of the 1982 vacated portion of Skyland Drive (the "Private Roadway")

would revert to all of the owners of the abutting parcels (the "Declarants"). However, the legal question raised by plaintiffs' claim, which does not turn on the factual accuracy of the recital, is whether the application of ORS 42.300 to the recital estopped defendants from denying plaintiffs' ownership of land to the centerline of the 1982 vacated road. The trial court concluded that it did not because the recital was not material to the easement agreement. We agree.

ORS 42.300 provides that, "[e]xcept for the recital of a consideration, the truth of the facts recited from the recital in a written instrument shall not be denied by the parties thereto, their representatives or successors in interest by a subsequent title." The Supreme Court, in construing the statutory predecessor to ORS 42.300, *former* ORS 41.350(3), *repealed by* Or Laws 1981, ch 892, § 98, concluded that common-law principles on which the statute was based apply to the statute. The court then concluded, "We interpret the word 'recital' as used in the statute to mean a statement of a fact which is material * * * and 'on which the transaction is founded.'" *Emmons et al v. Sanders et al*, 217 Or 234, 240, 342 P2d 125 (1959) (internal citations omitted). In applying that interpretation, the court stated, "We consider, then, whether the recital in a deed * * * is a recital of a fact that was sufficiently related to the transaction, *i.e.*, the transfer of title, as to constitute a representation or admission which should control the parties or their successors in interest." *Id.* at 241.

Here, the trial court concluded that the precise ownership of the vacated road was not sufficiently related to the transaction "as to constitute an admission or representation" because the agreement was set up in such a way that, whatever the ownership interests among the abutting landowners, they would all have the same easements rights (and maintenance obligations) in the entire length of the privatized road. The agreement was not founded on any facts related to the precise ownership in the vacated road of each respective abutting landowner, as demonstrated by the failure of the landowners to set out those precise ownership rights in the agreement with any kind of clarity. We reject plaintiffs' argument that, simply because the agreement

called the easement "mutual," the recital of ownership in the vacated portion of the road was material to the agreement. Accordingly, we affirm the trial court's dismissal of plaintiffs' estoppel claim based on the 1982 easement agreement.

Finally, we address the trial court's denial of plaintiffs' injunctive-relief claim against Lewis. "'An injunction is an extraordinary remedy, to be granted only on clear and convincing proof of irreparable harm when there is no adequate legal remedy.'" *Eagles Five*, 250 Or App at 422 (quoting *Knight v. Nyara*, 240 Or App 586, 597, 248 P3d 36 (2011)). "[T]o qualify for injunctive relief, it must be shown that the conduct to be enjoined is 'probable or threatened.'" *Id.* (quoting *McCombs et al v. McClelland*, 223 Or 475, 485, 354 P2d 311 (1960)). "An injunction may not be granted 'merely to allay the fears and apprehensions of an individual.'" *Id.*

Plaintiffs sought to enjoin Lewis from violating, in the future, the provision in the 1982 easement agreement that requires easement holders to obtain the other holders' consent before placing any obstruction in the easement area. Lewis had placed a mailbox structure off the paved roadway, but in the easement area, without obtaining plaintiffs' consent, but Lewis had removed it before trial and replaced it with a nonoffending mailbox. Lewis testified that he planned to keep the replacement mailbox in its new location for Lot 1, but that, although he did not have any current plans, he would need to add another mailbox for the subdivided lot "at some point." The only evidence to which plaintiffs point to support their claim is Lewis's testimony at trial that he did not think the 1982 easement agreement required an agreement from everyone for a mailbox and "no one has really done that." Plaintiffs argue that that testimony demonstrates that Lewis intends to violate the easement agreement in the future. The trial court's findings—that "there is currently simply no justiciable controversy and there has been no showing of irreparable harm to the Plaintiffs to support injunctive relief"—is supported by the evidence. The evidence on which plaintiffs rely is simply insufficient to justify the extraordinary injunctive relief that plaintiffs seek, and the trial court did not abuse its discretion in refusing to grant it.

Because we affirm the trial court's denial of plaintiffs' claims premised on the 1982 easement agreement, we also affirm the trial court's award of attorney fees to defendants as the prevailing parties on those claims.

Reversed and remanded as to plaintiffs' claim for quiet title, plaintiffs' and defendants' respective claims for declaratory relief, and the statutory cost award; otherwise affirmed.